**WESTWOOD CHEMICAL, INC.,**
Plaintiff,

v.

**OWENS–CORNING FIBERGLAS CORPORATION, Defendant.**

No. C 63–460.

United States District Court,
N. D. Ohio, E. D.

July 29, 1970.

Paul A. Weick, Weick & Genovese, Akron, Ohio, C. D. Lambros, Berger, Kirschenbaum & Lambros, Cleveland, Ohio, Arland T. Stein, Blenko, Leonard & Buell, Pittsburgh, Pa., for plaintiff; T. A. TeGrotenhuis, Cleveland, Ohio, of counsel.

William H. Webb, Webb, Burden, Robinson & Webb, Pittsburgh, Pa., Warren Daane, Baker, Hostetler & Patterson, Cleveland, Ohio, for defendant; Owen & Owen, Toledo, Ohio, of counsel.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

CONNELL, District Judge.

### FINDINGS OF FACT

1. The plaintiff in this case Westwood Chemical, Inc., is an Ohio Corporation, having its principal place of business at Olmsted Falls, Ohio. The business of the plaintiff was the sale of fatty acids, stabilizers for plastic materials and metal stearates for the rubber industry. The defendant, Owens-Corning Fiberglas Corporation is a Delaware Corporation, having its principal place of business at Toledo, Ohio. The business of the defendant corporation concerns the manufacture and sale of glass fiber and reinforced products.

2. This action, C 63–460, was filed June 10, 1963, against Owens-Corning Fiberglas Corporation and Johns-Manville Corporation. The original complaint contained four causes of action. The

first and second causes of action which charged violations of the Anti-Trust Laws of the United States, specifically 15 U.S.C. § 1 et seq. were dismissed, and the fourth cause of action containing allegations of infringement against Johns-Manville Corporation of the two patents in suit has been severed from this action. Therefore, only the third cause of action in the complaint stands, and it is this allegation upon which this suit was tried.

3. The third cause of action arises under the patent laws of the United States and alleges "infringement or actively inducing infringement and/or for contributory infringement of United States Letters Patent Nos. 2,742,378 and 2,841,-566."

4. Also pending in this Court are actions against Ferro Corporation, Johns-Manville Fiber Glass, Inc., Union Carbide Corporation, Molded Fiber Glass Body Corporation, Certain-Teed Products Corporation and Dow Corning Corporation, Civil Actions Nos. C 62-681, C 63-460, C 67-775, C 63-208, C 67-774, and C 67-787, respectively.

5. The defendant, Owens-Corning, has denied infringement and asserts affirmatively that each of the patent in suit is invalid on several grounds and is unenforceable by reason of fraud upon and misrepresentation to the Patent Office.

6. Jurisdiction is based on 28 U.S.C. § 1331 and § 1337.

7. U. S. Patent No. 2,742,378 (referred to as -378) was issued by the Patent Office April 17, 1956, and U. S. Patent 2,841,566 (referred to as -566) was issued by the Patent Office July 1, 1958.

8. The substance of this action relates to glass fibers treated with unsaturated organo-silanes for use in reinforcing polyester resins and the resulting polyester resin bodies.

9. Specifically, the alleged infringing practices of Owens-Corning are described in the document entitled "Commercial Textile Sizes and Mat Binders Employing Coupling Agents as Starting Materials" (PX-17) and a subsequent stipulation covered by a protective order (PX-18).

10. In the defendant's regular commercial operations it utilized four organo-silanes for treating glass fibers, the use of which is charged as an infringement. These organo-silanes are vinyl sodium silanolate (SS2D or SS2DN), vinyl trichlorosilane (A-150), vinyl trimethoxyethoxysilane (A-172) and methacryloxypropyltrimethoxysilane (A-174 or Z-6030). The first three are silanes and the fourth, A-174 or Z-6030 is neither a vinyl silane, allyl silane nor an alkylenyl silane (R. 962-68, 800-01, 1020; DX-Q, DX-KK).

11. The coupling compounds used by the defendant are applied to glass fibers from water solutions (R. 910-11).

12. Glass fibers treated with these coupling agents mentioned above are sold by Owens-Corning to purchasers who use the treated glass fibers for reinforcing polyester resins. Owens-Corning also uses some treated glass fibers for manufacturing tanks and the like, the glass fibers being used to reinforce polyester resins.

13. Owens-Corning first commercially sold glass fibers treated with vinyl sodium silanolate in early 1951 (R. 871). In 1951, Union Carbide commenced commercial production of vinyl trichlorosilane (A-150) and its use on glass fibers was commenced shortly thereafter by Owens-Corning (R. 1081-82). In late 1951 or 1952, Union Carbide commenced the manufacture of vinyl trimethoxyethoxysilane (A-172) and its use was commenced shortly thereafter (R. 1082). The methacryloxypropyltrimethoxysilane (Z-6030 or A-174) was not developed until about 1962 (R. 963, 1082). Thereafter, the use of this coupling agent was commenced (R. 963-64).

14. In June, 1942, Dr. Steinman at Owens-Corning began the study of glass and more specifically its surface chemistry, its condition, and the chemicals which would react with glass; and with this knowledge in the field, the defendant corporation would then begin the develop-

ment of a material that could utilize its good properties and minimize its weak tendencies.

15. Fiberglass-reinforced plastics or resins had been on the market since about 1940 (R. 501).

16. Glass fibers had been used commercially at this time and were found to be a successful material for the reinforcement of resinous material such as phenolic resins. Glass fibers were being used prior to the advent of unsaturated polyester resins; the next logical step was the attempted combination of glass fibers with this new polyester resin. The purpose of the combination of these two materials would be the added strength the glass fiber, an inorganic material, would give to the polyester resin.

17. Unsaturated polyester resins were developed during World War II (PX–23, p. 13; PX–24, p. 8; PX–25, p. 14; PX–22, p. 19). Due to the War, the resins were unavailable to private concerns and were restricted to governmental use until mid-1945 (PX–23, p. 14).

18. It was found at this time that there was a fair amount of water held on a glass fiber surface by bonds called hydrogen bonds (R. 1143–44). More specifically, the glass surface is composed of as many as 50 to 300 layers of water held to the glass fiber surface through hydrogen bonds.

19. It was found that chlorosilane would react with the hydroxyls on the glass surface permitting lubricity. This brought about the beginning of the "double fishhook" theory (R. 1145). This theory purposes that the coupling agent at one end reacts with the glass fiber surface, and the other end reacts with the resinous material by copolymerization (DX–G, Tab 24, Col. 4, 11.28–35; R. 1141–45).

20. In May 1940, Dr. Rochow discovered that methyl chloride could be brought to reaction with elementary silicon to produce methyl chlorosilanes (R. 624). Soon after this discovery, Dr. Rochow's colleague, Winton Patnode, was able to produce methyl chlorosilane in larger quantities.

21. Furthermore, Winton Patnode showed Dr. Rochow that the reaction of vapors of methyl chlorosilane with glass made it water repellent due to the fact that the methyl chlorosilane had reacted with the water surface on the glass. The result was a thin film or layer of methyl siloxane on that glass surface (R. 627).

22. Dr. Steinman and others at Owens-Corning began the use of organic-silicon compounds in treating glass fibers for the purpose of obtaining lubricity; more specifically the application of dodecyl trichlorosilane to glass fibers.

23. In the middle of February 1943, Dr. Steinman disclosed to Mr. Philipps and later about March 1943 he made the same disclosure to Mr. Overman of his concept of using allyl silanes and silicates as a coupling agent to bond glass fibers to laminating resins (R. 1142, 1101).

24. In June, 1943, Dr. Steinman discussed with Dr. Andregg the double-fish-hook theory that Owens-Corning had for improving glass fibers. This discussion included the application of unsaturated silanes to glass fibers.

25. Dr. Steinman made an allyl silane in 1943. The preparation of these allyl silanes being difficult and dangerous; Dr. Steinman was requested by Owens-Corning to end all preparation of these products and made arrangements with Dow Corning to supply him with any silane he needed (R. 1164–65, 1101).

26. Dow Corning was unable to supply allyl silanes immediately, and after repeated requests, Dow Corning was finally able to furnish Owens-Corning with the allyl silanes in mid-1945 (R. 1171, 1101–02).

27. Because no allyl silanes were available from Dow Corning, Dr. Steinman concentrated his efforts in the area of allyl silicate materials; as a result, the silicates were made and evaluated.

28. In testing these, it was found that the allyl silicate was the first material to show improved physical properties by thirty to forty percent in compression,

flexure and tensile strength (R. 1166–67).

29. The allyl silicates are structurally very similar to the allyl silanes, the only difference being that in the silane the allyl group is attached directly to silicon, whereas in the silicate the allyl group is attached to silicon through oxygen. The coupling mechanism by which each of these function in a glass fiber reinforced polyester resin is the same.

30. The unsaturation of the allyl group in each provides one fishhook which copolymerizes with the unsaturated polyester resin. The silicon and hydrolyzable group on the other end of the molecule acts as the other fishhook, whereby the silicate or silane is bonded to the glass surface through the hydroxyl groups on the surface of the glass fiber (R. 1167–68, 1107–08).

31. In comparison, the allyl silicate did not bond as well as the silane due to the fact that the strengths of the laminates made with the silanes were far better than that of the silicates (R. 1108).

32. This strong performance of the silicate gave added impetus in obtaining allyl silanes (DX–Z; DX–AAA; R. 1167–68).

33. In late July, 1945, Dow Corning was finally able to supply the first unsaturated silane (R. 1180, 1102).

34. The testing of these silanes took place immediately with the expected, good results (R. 1103; DX–BBB, pp. 90 et seq.; R. 1177–87; DX–DDD; DX–GGG).

35. The end result was the sale of glass fibers treated with an allyl silane, specifically diallyl diethoxy silane (OPT. 2), to the Shakespeare Company for use in their fiberglass reinforced polyester resin fishing rods (R. 1211, 1104, 870).

36. The diallyl diethoxy silane was used commercially in Finish 113 until the early 1950's (R. 870). About the same time, duPont developed an organic chrome complex sometimes called a Werner or Volan complex (R. 1079); the purpose being for incorporation in glass to improve adhesion of glass fibers to resins. The organic portion of this finish was a methacrylate which contained unsaturation and would copolymerize with the unsaturated polyester resins (R. 1107–08). This process was incorporated in Finish 114 and used in 1946, and was still in service in 1964 (R. 310; PX–107, p. 41).

37. In 1949, Union Carbide was making and sampling vinyl silanes in a pilot plant (R. 1081).

38. Vinyl silane first became commercially available in small quantities in late 1950 and early 1951, and the use has increased ever since (R. 893, 1081).

39. In late 1949, the United States Air Force contracted with Bjorksten Research Laboratory to develop a means of improving the adhesion of glass fibers to polyester resins (PX–194). Bjorksten Laboratory surveyed the industry and after about six months of testing and evaluation, Mr. Yaeger noted a bottle of vinyltrichlorosilane, furnished Bjorksten by Union Carbide, and thought it would make a good coupling agent (R. 1331). This experiment was tried and found to be effective (R. 1332). Bjorksten's result was a sizing compound of vinyl trichlorosilane and beta-chloroallyl alcohol. This finish was not a straight vinyl silane type of finish and had in it both the vinyl silane and an allyl derivative. This finish was applied from a solvent system and never became commercially used because of the hazards of volatility and the expense involved in using solvent systems (R. 909–10, 337; PX–72).

40. Due to the discovery of methods of preparing the vinyl silanes, Owens-Corning utilized the vinyl silanes in the double fishhook concept of Dr. Steinman, since the function of the allyl silane and the vinyl silane are identical (R. 1105–07).

41. In early 1951, Owens-Corning utilized a finish called Finish 136, which includes a vinyl silane as a coupling agent called vinyl sodium siloxanolate known

commercially as SS2D or SS2DN (R. 870–71).

42. Owens-Corning now sells and has sold glass fibers treated with SS2D since 1951 (R. 871). Its use of sodium siloxonolate is charged as infringement in this suit.

43. In 1951, Union Carbide had developed vinyl trichlorosilane, designated A–150, to the point of making it available as a useful commercial material. Shortly thereafter, additional finishes based on this product were quickly developed (R. 1081–82).

44. The Garan finish, or coupling agent, invented by Dr. Steinman became available for use in 1951 (R. 1136–37). And in late 1951, a vinyl trimethoxyethoxysilane which is designated A–172 was produced (R. 1082). All these finishes are still in use today (PX–107, p. 41).

45. In early 1962, Union Carbide introduced the compound known as A–174 and also known as Z–6030 by Dow-Corning. This compound is sold today and is an organic silane in which the organic portion is a methacrylato group (R. 963, 1082). The use of these materials is also charged as an infringement.

46. Mr. T. A. TeGrotenhuis was a patent attorney and chemical consultant for the General Tire and Rubber Company (R. 417). During the period from late 1941 until November 1944 he was consulting for General Tire and performing duties with respect to the preparation of a synthetic latex that could be used in place of natural latex. Mr. TeGrotenhuis was also working on the problems of improving the reinforcement of high polymers such as rubber with various inorganic solids.

47. On November 15, 1944, Mr. TeGrotenhuis attended a lecture given to the Cleveland Engineering Society by Dr. Rochow of General Electric. During the lecture Dr. Rochow demonstrated the properties of the organo-silane compounds, pointing out that organochlorosilanes would hydrolyze and, therefore, when brought into contact with a glass surface, they would react with the water adsorbed on that glass surface, and deposit a highly water repellent film of an organic siloxane attached to the glass, just as the adsorbed water had been (R. 636–37; PX–4). The second aspect of Dr. Steinman's double fishhook concept, being that the unsaturated groups of the organo-silanes would react and copolymerize with polyester resins, was well known at this time to those working in the art.

48. Mr. TeGrotenhuis wrote a memorandum (PX–4) proposing to treat pigments for rubber, paint, printing ink and the like with silanes. However, his memorandum made no reference to the treatment of glass, it did not state the portion of the organic silane to be used, nor did it refer to polyester resins or to glass fiber reinforced polyester resins.

49. Mr. TeGrotenhuis performed only five of the seventeen examples stated in his original application of March 1945. No experiments were made with glass, glass fibers, polyester resins or unsaturated silanes (R. 499). Mr. TeGrotenhuis does not claim to be the inventor of fiberglass reinforced resins or plastics, nor does he claim to be the inventor of any of the polyester resins disclosed in the patents in suit. The plaintiff does not claim to have invented glass fiber reinforced resins having a bond between the fibers of the resins, nor does he claim to have invented the use of organo-silicon compounds on glass surfaces to provide a coating integral with the glass surface, nor did Mr. TeGrotenhuis discover that allyl silanes would adhere tenaciously to glass, nor did the plaintiff discover that unsaturated silanes would copolymerize with unsaturated polyester (alkyd) resins, nor did the plaintiff discover that alkenyl organo-silanes, which includes allyl organo-silanes and vinyl organo-silanes, are useful for coating glass fibers, nor did the plaintiff discover that organo-silicon compounds are capable of copolymerizing with monomers (R. 516–18; 422–25; 553–54; 564–65).

50. Mr. TeGrotenhuis claims to have contributed "Those broadly having an alkenyl group carried by silicon in combination with interpolymerized resin" (R. 518).

51. Mr. TeGrotenhuis claims to be "the inventor of glass surfaces or solid inorganic surfaces which have vinyl groups attached integrally with the surfact of the glass or such solid" (R. 518).

52. The –378 and –566 patents assert that vinyl silanes are superior in performance to the allyl silanes (R. 577). This alleged fact has been contradicted by plaintiff's witness (R. 248) and to the truth of this contradiction the defendant's experts concur (R. 1105, 1085, 780–81, 872–77).

53. Mr. TeGrotenhuis has made no tests with respect to the reactivity of the two silanes. The record shows that he relied on what he had "seen in the literature for the different results where the vinyl gives a much higher, much superior result." (R. 580, 590)

54. The patent application of Mr. TeGrotenhuis filed in March, 1945, did not mention glass fibers or glass fiber reinforced polyester resins (R. 502). The 1945 application mentioned only rayon, nylon and cotton (R. 503). Mr. TeGrotenhuis in his 1945 patent failed to mention or even alude to glass, or glass fiber reinforced polyester resins. The failure to mention glass while mentioning the other fibers was "because it was so obvious" (R. 502). The specific fibers mentioned were organic fibers, which refers to the chemistry of the hydro-carbons and their derivatives, while on the other hand, glass is an inorganic fiber and falls in a different chemical category referring to those chemical compounds not containing carbon (PX–3, p. 1720; R. 503–04). The first mention of glass fiber or glass fiber reinforced polyester resins in a United States patent application filed by Mr. TeGrotenhuis was in an application filed in 1951 (PX–7).

55. The TeGrotenhuis patent No. 2,-742,378 (PX–1) issued on April 17, 1956 on application Serial No. 302,415 (PX–

9), filed August 2, 1952, is alleged to be a continuation in part of application Serial No. 243,737, filed August 25, 1951, and of application Serial No. 585,824 filed March 30, 1945 (PX–7 and PX–5, respectively).

56. Patent No. 2,841,566 (PX–2) issued on application Serial No. 439,463 (PX–10) was filed June 25, 1954. That application purports to be a division of application Serial No. 302,415 filed August 2, 1952, which was a continuation-in-part of application Serial No. 585,824, filed March 30, 1945.

57. As to the –378 patent, plaintiff relies on claims 1, 3, 4, 6, 7, 8, 11, 14, 15–19, 21, 23–26 and 28 and has specified claims 11, 16 and 25 as example claims. As to the –566 patent, plaintiff relies on claim 8.

58. The plaintiff has stated that "we will be willing to stipulate that we must carry our date back to the date of the March 30, 1945 application" (R. 13). Therefore the validity of the –566 patent and the –378 patent as a matter of law and by stipulation of the parties must have the benefit of the March 30, 1945 application, Serial No. 585,824 in view of the existing prior art.

59. Both patents, –378 and –566, pertain to the treatment of fillers, pigments and fibers with an organo-silicon compound, referred to as a coupling agent, which forms a bond with the filler, pigment or fiber and with a polyester resin into which the reinforcing material is placed. The claims of –378 patent are addressed to the use of a vinyl silane as a coupling agent; whereas, the single claim of the –566 patent in issue, namely claim 8, is broadly addressed to a coupling agent having an alkylenyl (alkenyl) group other than vinyl.

60. The TeGrotenhuis application Serial No. 585,824, filed March 30, 1945 admittedly resulted from the teachings of Dr. Rochow that organo silicon compounds could be bonded to glass surfaces, and that those organo silicon compounds, if unsaturated, would copolymerize with monomers such as styrene (R. 636–37,

565). Again this Court points out that the March 1945 patent makes no reference to glass or glass fibers (R. 502–04).

61. The 1945 application was entitled "Pigmented Compositions and Methods of Making Same." The scope of the invention encompasses pigmented compositions and methods of making pigmented compositions; and it made no reference to glass, glass fibers or the treatment of glass or glass fibers with organo-silanes (PX–5, p. 1). The list of compounds in the application includes practically all conceivable hydrolyzable organo-silicon compounds, which literally encompasses millions of compounds (R. 896). There is also disclosed organo-silicates as well as organo-silanes. This list also includes both allyl and vinyl silanes among the millions of compounds disclosed; however, no distinction is made between them. No statement is made in this patent as to the superiority of vinyl silanes as opposed to allyl silanes or any other unsaturated silanes (R. 894).

62. After general disclosures, the original application set forth some specific examples. One group relates to the preparation of treated pigments, specifically carbon black and titanium dioxide (PX–5, pp. 8–9). Another group related to the preparation of a type of rubber compounds in which the treated pigments were incorporated (PX–5, pp. 10–14). The third group is directed to the preparation of printing inks and coating compositions in which the treated pigments were incorporated (PX–5, pp. 15–17). The fourth group was directed to the preparation of synthetic fibrous material, specifically rayon, in which the treated pigments, carbon black and titania were incorporated to color the fiber (PX–5, p. 8). Finally, one example was given for the preparation of finely divided pigments, specifically cement clinkers (PX–5, pp. 19–21).

63. This 1945 TeGrotenhuis application, of which the plaintiff must have the benefit, makes reference to hydrolyzable vinyl silane. Plaintiff's witness, Dr. Price, stated that there was "no disclosure in the art as of March, 1945 of mak-

ing vinylhydrolyzablesilane" (R. 239). This statement of fact was further verified when Dr. Rochow admitted that there was not available or procurable any vinyltrichlorosilane or any other vinyl hydrolyzable silane until the work of Dallas Hurd in the fall of 1945 (R. 621).

64. The 1945 application of T. A. TeGrotenhuis suggests several methods for making organo-silicon halides. The first method was the use of a Friedel-Crafts catalyst (PX–4, p. 6, l.15). Dr. Kanner attempted to make a hydrolyzable vinyl silane by this method and could not do so (R. 958–59; DX–HH; DX–II). Dr. Henry Gilman, also speaking authoritatively on this subject, stated positively that in 1945 a hydrolyzable vinyl silane could not be made by this method (R. 1011–13).

65. In this 1945 patent, T. A. TeGrotenhuis suggested the possibility of making these silanes by a Grignard synthesis (PX–5, p. 6, l.16). Dr. Gilman stated with respect to the amount of times he used the Grignard synthesis, "it is conservative to state that it is in the thousands." And on two occasions prior to 1945, he tried to prepare a vinyl Grignard reagent in connection with his own work, and failed in both instances. It was not until after 1945 that the first vinyl Grignard reagent was successfully made (R. 1009–11).

66. Mr. TeGrotenhuis suggests in his 1945 application the preparation of silanes by a Wurtz synthesis (PX–5, p. 6, 1.16). To this statement, Dr. Gilman testified that vinyl hydrolyzable silanes were not recoverable from the Wurtz synthesis (R. 1016) as set forth in the 1945 application.

67. The 1945 TeGrotenhuis application listed seven patents as teaching the preparation of organo-silicon halides (PX–5, p. 6, 11, 2–30). Upon examination of these patents, Dr. Kanner testified that there is no disclosure in any of these patents of any method of preparing a vinyl hydrolyzable silane (R. 968–69).

68. The 1945 TeGrotenhuis patent suggests the possibility of preparing a

vinyl silane (butadienyl silicon halide) by a Grignard synthesis from silicon tetrachloride and chloroprene. Dr. Van Auken of Union Carbide attempted to carry out this reaction and using the best methods known failed in these experiments and "we tried all of these things several times." His conclusion was that it could not be done (R. 935–37; DX–DD). Independent of Dr. Kanner's experiment, Dr. Aufdermarch of duPont attempted the same reaction and failed (R. 900–04; DX–CC). In attempting to prepare Grignard reagents from chloroprene, "we tried to carry out this reaction and we couldn't get it to do so * *. We tried all the various tricks that chemists know to get the reaction to initiate * * * and it was to no avail because we couldn't get the reaction to go" (R. 901).

69. The TeGrotenhuis application, Serial No. 243,737, was filed August 25, 1951 after the defendant began the commercial use of both allyl silanes and vinyl silanes on glass fibers for use in reinforcing polyester resins (R. 870, 871).

70. This application stated that it was "a division or continuation-in-part of my application Serial No. 585,824 filed March 30, 1945 * * * " (PX–7, p. 1). This application contained new subject matter not included in the 1945 application. Due to this new disclosure the Patent Office referring specifically to Example 1, relating to dry glass fabric requested cancellation as to this reference (PX–7, p. 17).

71. The 1951 application, Serial No. 243,737, filed August 25, 1951, was limited to unsaturated organo-silicon compounds and included both the silanes and the silicates. Whereas the 1945 application included practically all conceivable organo-silicon compounds, the saturated and unsaturated silanes, the silicates, and the aromatic silanes, etc. (PX–7, p. 2).

72. In this patent, both the allyl silanes and the vinyl silanes are disclosed and treated as equivalents for their intended purposes. There is no preference suggested for the vinyl silanes in this application.

73. It is to be pointed out that in the 1951 application, Mr. TeGrotenhuis made an oath that no application had been filed "on this invention or discovery", in any foreign country. It is noted by this Court that patent applications had been filed in Australia, France and Great Britain in 1947 which closely correspond to the 1945 application (PX–80, 82). However, the required oath accompanying the 1951 application as well as the oaths accompanying the –378 and –566 patents claim that this is the first of this particular discovery.

74. The Patent Office recognized that the 1951 application contained new matter not included in the 1945 application and required a cancellation of the statement that the 1951 application was a "division" of the 1945 application (PX–71, pp. 1, 17). The Examiner specifically referred to the disclosure of dry glass fabric as constituting new matter not contained in the original 1945 application (PX–7, p. 17).

75. The Examiner also held that the claims directed to vinyl silanes were obvious in view of the teachings of the prior art regarding the use of allyl silanes. "Nothing patentable is seen in substituting the claimed vinyl silicon compounds for allyl silicon compounds in this reference, especially since there is no indication that any unusual or unexpected results are obtained thereby" (PX–7, p. 17). At this time, Mr. TeGrotenhuis then asserted that vinyl silanes are superior to allyl silanes (PX–7, p. 28). According to the testimony given by both plaintiff's and defendant's witnesses, the two silanes are equivalent (R. 248, 236–37, 787, 872–77, 1083–87, 1106–08).

76. At this point, the Patent Office referred to Mr. TeGrotenhuis's interference attempt against the Steinman patent, and specifically held that the 1945 application did not disclose glass fibers (PX–7, pp. 39, 46).

77. Also this Court points out that Mr. TeGrotenhuis represented that

"vinyl" and "vinyl group" by definition require the double bonded carbon to be attached to silicon (PX–7, p. 132). This statement is correct; however, in A–174 and Z–6030, the double bonded carbon is separated from the silicon atom by at least four carbon atoms and one oxygen atom (R. 800–01, 962–68; DX–Q).

78. The TeGrotenhuis application Serial No. 302,415, filed August 2, 1952, eventually issued as the –378 patent; one of the two patents in suit (PX–9). This application was directed to the treatment of pigments and fibers; whereas, the 1951 application was directed to fibers only.

79. This application again contained the scientifically incorrect statement that vinyl silanes are superior to other silanes (PX–9, pp. 32–47). This statement made by Dr. Urbanic (PX–9, p. 101) is not supported by any tests or any recognized authority, or by any of the witnesses.

80. The oath accompanying the 1952 application made no reference to the 1945 application. The assertion that the –378 patent was a "division or continuation-in-part" of the March, 1945 application (PX–9, p. 1) was ordered stricken by the Examiner; pointing out that Examples 1 to 4 which related to glass fabric constituted new matter (PX–9, p. 24).

81. This application, stating the preference of vinyl silanes over other silanes, is based on an incorrect statement which has already been discussed. It is noted by this Court that this application was filed one day after the amendment in the 1951 application, Serial No. 243,737, in which Mr. TeGrotenhuis first incorrectly asserted the superiority of vinyl silanes. It is further noted that there were prior art references cited and that the only new discovery was the alleged superiority of vinyl silanes. It is noted that the oath accompanying this application was not the proper oath for a continuing application, (See 37 C.F.R. § 318, and compare with PX–9) and it made no reference to the 1945 application.

82. The application Serial No. 439,-463, which was filed June 25, 1954 as a division of application Serial No. 302,415, eventuated into the –566 patent in suit (PX–10). This patent is also claimed to be a continuation-in-part of the 1951 application Serial No. 243,737 and the 1945 application Serial No. 585,824 previously considered (PX–10, p. 1).

83. The specification, as filed, was very similar to the original specification of application Serial No. 302,415. But, as in application Serial No. 302,415 and application Serial No. 243,737, the specification was significantly different from the specification of application Serial No. 585,824 (PX–9, p. 1; PX–7, p. 1; PX–5, p. 1). The principal difference between the Serial No. 439,463 specification and the Serial No. 302,415 specification was that the broad references to the unsaturated or olefinic silanes were replaced by references to allyl silanes; and the references to vinyl silanes were deleted (See and compare PX–9, p. 3 to PX–10, p. 3).

84. The oath in this application referred to the original 1945 application, however, the requisite averments regarding the subject-matter not common with the 1945 application were not made. No averment was made regarding the foreign applications or foreign patents on the subject matter not common to the 1945 application. The 1947 French application had been filed in France disclosing and had claimed subject matter not common to the 1945 application, namely, glass fibers and glass fabric. A French patent had issued June 18, 1952 (PX–80A, p. 17) on this application prior to the filing date of application Serial No. 439,463.

85. It is noted by this Court that with respect to the prosecution of the –566 patent, Mr. TeGrotenhuis in making reference to the Johannson Patent No. 2,-436,304 (DX–G, Tab 16), asserted that there was no disclosure "of any material having allyl groups on the surface * * reacted with another monomer" (PX–10, p. 26). It is noted that Example 2 of that patent taught that treated glass fibers having allyl groups on the surface treated

with methyl violet, an olefinic unsaturated compound having conjugated double bonds, will react with the unsaturated allyl silane on the glass fibers (R. 678–87). The plaintiff states that polystyrene could not have any residual unsaturation to react with the allyl groups. However, the testimony of Dr. Rochow shows that there is sufficient monomer remaining in polystyrene to react with all the allyl groups present on the treated fibers (R. 760–66; DX–O).

86. The Patnode Patent No. 2,306,222 (DX–G, Tab 3), which issued on an application filed on November 16, 1940 teaches the use of organo-silicon halides on glass products. This patent teaches that glass surfaces, and specifically the surface of glass fibers, when treated with vapors of an organo-silicon halide become water-repellent (R. 644–45). Patnode teaches that the treatment provides the glass surface with an invisible, tightly adherent water-repelling surface, which becomes integral with the glass (DX–G, Tab 3, P. 1, Col. 2, ll. 3–13). Patnode explained the mechanism by which the film attached, stating that "organo-silicon halide vapors react with an adsorbed film of water to form the corresponding silicol, which is strongly adsorbed" (DX–G, Tab 3, P. 2, Col. 1, ll. 45–50; R. 645).

87. In the lecture that Dr. Rochow gave to the Cleveland Engineering Society on November 15, 1944, the substance of the Patnode patent was presented and demonstrated (R. 644–30).

88. The Hyde Patent No. 2,390,370 (DX–G, Tab 7) issued on an application filed October 11, 1943 is directed "to coatings for glass fibers particularly when grouped in strand or yarn form" (Page 1, Col. 1, ll. 1–3), and teaches the treating of glass fibers with hydrolyzable organo-silanes to protect the surfaces of the fibers and hold the fibers together as a strand (R. 646).

89. The hydrolyzable organo-silanes taught as suitable include "alkenyl such as methallyl, allyl, etc." (P. 2, Col. 1, ll. 60–61). Plaintiff's expert, Dr. Price, points out that "alkenyl" embraces vinyl,

and that vinyl is the simplest alkenyl (R. 183). Dr. Rochow and Dr. Jellinek agree that the "etc." taught that vinyl silane was within the scope of the patent (R. 661, 1087). Here it can be clearly seen that Hyde teaches the use of both allyl and vinyl hydrolyzable silanes on glass fibers.

90. The Hyde patent further teaches that the organo-silane coating is useful in promoting the adhesion of electrical insulating varnishes to glass fibers (DX–G, Tab 7, P. 4, Col. 1, ll. 10–22). The insulating varnishes contain unsaturated groupings and harden by a process of air-induced polymerization (R. 647, 652). Such varnishes contain liquid polymerizable monomers (R. 650), and when an alkenyl silane is placed on glass fibers, as taught by Hyde, and an insulating varnish is applied to the treated fibers, the result is the "hardening or polymerization of the insulating varnish fastening itself to the underlying alkenyl siloxane and polymerizing in place" (R. 652).

91. The Biefeld Patent No. 2,392,805 (DX–G, Tab 8) issued on an application filed on October 11, 1943 is directed to the manufacture and protection of glass fiber strands (R. 659). It teaches the treatment of glass fibers with a composition which includes a hydrolyzable organo-silane; and it teaches that suitable hydrolyzable organo-silanes include "alkenyl such as methallyl, allyl etc." which includes the vinyl silanes, substituted vinyl silanes, butenyl silanes and allyl silanes (R. 659–61). One purpose in so treating the glass fibers is (Page 1, Col. 2, ll. 40–49):

"to provide a heat-resistant lubricant and binder that are compatible with a large number of resins. This aspect of the invention is important where the yarns, strands or fabrics are used to reinforce plastics or to be combined with resins in the manufacture of electrical insulation and plastic laminates. In many cases lubricant and binder of the invention may act to actually increase the adhesions of the

plastics or resins to the surfaces of the fibers."

Biefeld also states (P. 3, Col. 1, ll. 71–Col. 2, l. 3):

"An added advantage of the present invention is that the coating materials are compatible with a large number of resins and, since they also adhere strongly to the fiber surfaces and are not adversely affected by the heat used to cure the resin, the strength of resin-glass fiber combinations such as plastic laminates is markedly bettered."

92. It can be seen by this patent, that Biefeld specifically teaches the treating of glass fibers with allyl and vinyl silanes and using the treated glass fiber for reinforcing resins or plastics. Furthermore, it teaches that such a treatment will improve the adhesion of the *reinforcing fiberglass to the resin* (R. 661–62).

93. The Johannson Patent No. 2,436,-304 (DX–G, Tab 16) was issued on an application filed June 11, 1943 and is directed to "coatings on solid or fibrous bodies" (Col. 1, ll. 1–3). It teaches that (Col. 11, ll. 30–44; See also Dr. Rochow, (R. 678–79):

"Another object is to provide organophobic base members with adherent films which act as bonding agents for organic resins, lacquers and the like.

Another object is to bond organic resins, lacquers and the like to base members of siliceous character.

Another object is to provide a method for increasing the adhesion on organic resins, lacquers and the like to glass surfaces.

Still another object is to provide an invisible and permanently attached priming coat on normally organophobic base members for the irreversible attachment of organic compositions."

The patentee Johannson states that the basis for his invention is (Col. 1, ll. 44–52):

"My invention is predicated upon my discovery that organophobic surfaces become organophilic when treated with organo-silicon compounds comprising hydrolyzable organo-silicanes, their hydrolysis products or their polymerized hydrolysis products, and that the adhesion or organic compositions such as resins, plastics, lacquers, paints, dyes and the like to the organophilic surfaces thus provided is substantially greater than it is for the original untreated surfaces."

The patentee, Johannson, defines the organo-silanes which are suitable and specifies among others, "alkenyl such as methallyl, allyl, etc., (Col. 2, l. 18; R. 689). Johannson then describes the practice of the invention as follows (Col. 2, l. 49, to Col. 3, l. 2):

"In the practice of my invention a primary coating is applied to the base member by contacting the latter with one or more of the aforesaid hydrolyzable organo-silicanes, their hydrolysis products as priming agents and thereafter another organic material such as a resin, plastic, gum, lacquer, paint, dye or the like, is applied to the treated surface of the base member."

94. The examples given by Johannson include all the essential elements of the claims of the patents in suit. In Example No. 2 (Col. 2, ll. 65–75), glass fibers were treated with a hydrolyzable allyl silane, namely, methallylsilicon trichloride. Thereafter the treated fibers were brought into contact with methyl violet dye, which contains conjugated double bonds (R. 681; DX–L). The allyl silane (methallylsilicon trichloride) also contains double bonds as does the methyl violet (R. 686–87). Therefore, when the treated glass fibers of Example No. 2 are brought into contact with methyl violet, a reaction takes place between the double bonds of the treating agent (the methallyl groups on the glass) and the conjugated double bonds of the methyl violet (R. 687).

95. Example No. 5 of this patent (Col. 4, ll. 25–38) also teaches a positive chemical reaction between a primer (glass fiber surface), a coupling agent

(an amino organo silane) and a subsequent organic material (diazotized aniline hydrochloride) (R. 683; DX–M).

96. As can be seen, the Johannson patent teaches the treating of glass fiber surfaces with hydrolyzable organo silanes which are thereby bonded to the glass surface. The silanes can be alkenyl silanes, including both allyl and vinyl silanes. This patent also teaches the bringing of a coating composition into contact with the treated glass which reacts *in situ* with the silane to directly bond the coating composition to the glass.

97. The Johannson Patent No. 2,557,-787 (DX–G, Tab 25) was issued on an application which was a division of the application No. 2,436,304 filed June 11, 1943. This patent being a division, has the effective filing date of June 11, 1943. This patent is specifically directed to a method of "increasing the adhesion of organic resins to glass surfaces" (Col. 1, ll. 35–36). The basis for the invention is described as follows (Col. 1, ll. 37–43):

"My invention is predicated upon my discovery that siliceous surfaces become organophilic when treated with organosilicon compounds comprising organosilicon halides, and that the adhesion or organic resins to the organophilic surfaces thus provided is substantially greater than it is for the original untreated surfaces."

98. The organo-silicon halides listed by Johannson to be useful include "alkenyl such as methallyl, allyl, etc." (Col. 2, ll. 4–5). The alkenyl includes vinyl silanes (R. 183, 661, 961–62, 1086–87).

99. As to example No. 10, Dr. Rochow explained its importance and states as follows (R. 692):

"Here, some glass plates had been primed with phenylsilicon trichloride in benzene, and then the excess rinsed away with benzene. A drying oil varnish was then applied to the plates of glass, both treated and untreated, and the plates were immersed in water which was heated to 95 degrees Centigrade. In 18 hours the varnish was

free from the unprimed glass but still had good adhesion about 96 hours to the primed glass.

"I should like to point out that drying oil varnish consists of a mixture of liquid olefinically unsaturated polymerizable substances, and that the preferred drying oils contain conjugated double bonds of the type illustrated in the Feiser and Feiser organic books.

"This test provides us with a good illustration of the polymerization of a polymerizable liquid compound to the treated glass surface, said combination by actual test having been fastened much better to the glass surface than the same drying oil varnish applied to unprimed or untreated glass."

100. As pointed out by Dr. Rochow, Johannson used phenyl silicon trichloride in this example. Dr. Rochow demonstrated that phenyl silicon trichloride does in fact have vinyl type unsaturation (R. 794–97). Dr. Rochow concluded that Example No. 10 of the Johannson patent was using a vinyl type unsaturated substance as a coupling agent—a material which reacted with the adsorbed water on the glass surface and established an organo-silane layer which later could bond with the overlying material added on top of the coupling layer (R. 797).

101. The Kropa Patent No. 2,465,731 (DX–G, Tab 20) was issued on an application filed August 1, 1944, and is directed primarily to a method of preparing allyl chlorosilanes, but its teachings of the properties and uses of those silanes are significant.

102. This patent first describes the method of preparing allyl chlorosilanes and gives three examples of its preparation. It then describes the properties of the silanes and the hydrolysis of the silane to the silicol. It is recalled that hydrolyzed silane—the silicol—is what the defendant utilized to treat glass fibers. The patent specifically teaches that both the silanes and silicols will polymerize "with unsaturated alkyd resins" (Col. 5, ll. 51–53). Kropa lists specific resinous materials with which the silicols

and silanes will polymerize (Col. 5, l. 57, to Col. 6, l. 3), which include all of the resinous materials used by defendant and its customers.

103. The Kropa patent teaches that the allyl silicols are useful in coating compositions, as adhesives, and in laminating (Col. 6, ll. 4–7). This patent also states (Col. 6, ll. 14–18) that:

"Since the polymers and copolymers of allyl silicane and the corresponding silicols and silicones adhere to glass very tenaciously, they are particularly useful for glass coating compositions or as adhesives for glass."

As can be seen by this patent, silicols adhere tenaciously to glass, are useful for glass coating compositions and furthermore the silicols are capable of copolymerizing with the very resins used by defendant and its customers.

104. The Steinman Patent No. 2,513,-268 (DX–G, Tab 24) was issued on an application filed December 30, 1944, which was filed prior to the filing of the original Te Grotenhuis application and covers an invention made by Dr. Steinman in 1943. This patent teaches the manufacture of "fibrous glass combined with resinous material or plastics" (Col. 1, ll. 1–3). This patent teaches that one of the objects is to provide "as an adhesion-promoting agent, substances capable of polymerizing with the resin and reacting with the glass surface of the fibers to create a secure interbond between these dissimilar materials" (Col. 2, ll. 48–53). It states that the invention "provides for increasing the adhesion between resinous materials and glass fiber surfaces by incorporating in the composite material a substance or substances which are effective to promote a strong bond between the resinous materials and the fibers" (Col. 2, l. 54) (Col. 3, l. 4). Steinman teaches the treating of glass fibers with allyl silicates; these allyl silicates are not identical with the materials presently used; however, they are structurally similar and function in the same manner as

the allyl silanes and the vinyl silanes (R. 1106–08, 1226–28).

105. In Dr. Steinman's patent, there is described in detail his "double fishhook" or coupling concept, stating (Col. 4, ll. 28–35):

"The improvements experienced by practice of the present invention are believed due, at least in part, to the fact that the unsaturated silicates are capable of copolymerizing with the resin to become in effect one with the resin surrounding the fiber surfaces. They also are believed to react by hydrolysis with the glass surfaces to be anchored securely to the fibers."

106. The Steinman Patent No. 2,563,-288 (DX–G, Tab 26) was issued on an application filed November 13, 1945. Although it was filed about nine months after the TeGrotenhuis 1945 application, it contained a disclosure of glass fibers which was neither disclosed nor suggested by TeGrotenhuis in 1945. Furthermore, the first United States patent filed by TeGrotenhuis relating to any alleged invention concerning glass fibers was not filed until 1951; nearly six years after this Steinman patent.

107. This Steinman patent teaches the use of allyl silanes in place of the allyl silicates (the allyloxy silanes) as the coupling compound and is considered by this Court an extension of the Steinman –268 patent. The mechanism of operation is fully described in the same manner as the previous Steinman patent (Col. 1, ll. 18–31).

"Although my patent is not to be limited by theoretical considerations, I believe that the improved properties of the laminates produced by my invention may, in part, be explained by the fact that the class of organo-silicon compounds which I use for the pretreatment of the fibrous glass materials are of such molecular structure that they adhere well both to the glass fibers and to the plastic or resin. The silicon portion reacts with and becomes a part of the glass surface and the

double bond in the organic radical of the sizing compounds tends to react with the plastic or resin to form a strong chemical union between these two materials which insures a continued strong bond even in the presence of water or moisture."

As can be seen from this patent there is clearly a teaching of interpolymerization between resin and the silane. Furthermore, the evidence shows that Dr. Steinman and Mr. Philipps conceived this invention in 1943, and then proceeded to reduce it to practice (R. 1098–1101, 1141, 1142, 1145–49, 1155–56; DX–RR; DX–CCC). Some glass fibers were treated with the allyl silanes as early as 1943 (R. 11–55–59, 1215–16; DX–TT, p. 319). However, further quantities of allyl silanes could not be obtained until 1945 when commercial production of glass fibers with allyl silanes began (R. 870). The knowledge of Dr. Steinman is clearly prior to the TeGrotenhuis patent. The Steinman patent –288 was conceived in February 1943, and its disclosures were made to Mr. Thomas Philipps, in 1943 (R. 1098–1101, 1141, 1145–49), to Mr. Overman in March or April 1943 (R. 1142), to Dr. Andregg on June 4, 1943 (R. 1155–56) and to Owens-Corning in a seminar given in April, 1944 (R. 1168; DX–YY; DX–ZZ). Furthermore, Dr. Steinman proceeded to obtain allyl silanes and reduce his invention to practice (R. 1150–51, 1101–04, 889; DX–SS, DX–Y, DX–Z), and when allyl silanes were finally obtained in the summer of 1945, he immediately began using them (R. 1098–1101, 1141, 1142, 1145–49, 1155–56; DX–RR; DX–CCC). Some glass fibers were treated with the allyl silanes as early as 1943 (R. 1155–59, 1215–16; DX–TT, p. 319), however, further quantities of allyl silanes were unobtainable until commercial production of glass fibers treated with allyl silanes began in 1945 (R. 870).

108. The Witt Patent No. 2,649,396 (DX–G, Tab 30) was issued on an application filed on March 17, 1949. This patent teaches the treating of glass fiber with both allyl silanes and vinyl silanes and thereafter applying a polyester resin to the treated fibers and causing the resin to form a bonded structure by *in situ* polymerization (Col. 4, ll. 36–50).

## CONCLUSIONS OF LAW

1. After the –378 patent issued, an interference was declared by the Patent Office between the claims in the –378 patent and the claims in a patent filed by Luther S. Yaeger of Bjorksten Laboratories. The plaintiff has made references to this decision as holding that Mr. TeGrotenhuis is entitled to the benefit of the 1945 filing date of his patent. Upon review of this case, TeGrotenhuis v. Yaeger, 290 F.2d 951 (C.C.P.A. 1961), this Court finds that this interference proceeding was directed to one specific issue, namely, whether or not Mr. TeGrotenhuis's 1945 application contained a sufficient disclosure of vinyl silanes to entitle him to the benefit of the 1945 filing date for claims directed to vinyl silanes. In the Court's opinion, reversing the Patent Office Board of Interferences, it held that the 1945 application did contain a sufficient disclosure of vinyl silanes. This Court accepts the opinion of that Court, however, its holding is narrow and contains nothing concerning other features of the –378 patent which Mr. TeGrotenhuis relies upon to gain the benefit of the 1945 filing date. As has been pointed out previously, this Court is concerned with whether or not there was a disclosure of glass or glass fibers in the 1945 application which could give the plaintiff the benefit of the 1945 filing date for that claim. Also this Court is concerned with the disclosure of the superiority of vinyl silanes over other silanes, notably allyl silanes, which would entitle him to the benefit of the 1945 application for claims concerning that issue. The Court of Customs and Patent Appeals did not have before it, nor did it speak or determine the sufficiency of the 1945 application in view of the failure thereof to teach a method whereby the vinyl silanes

could be made, nor did the Court consider or speak of the relevant prior art.

■ 2. For a patent to issue, there must be the requisites of novelty, utility and invention. Allied Wheel Products v. Rude, 206 F.2d 752 (6 Cir., 1953); United States Gypsum Co. v. Consolidated Expanded Metal Companies, 130 F.2d 888 (6 Cir., 1942) cert. denied 317 U.S. 698, 63 S.Ct. 441, 87 L.Ed. 558.

3. In Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152–153, 71 S.Ct. 127, 130, 95 L.Ed. 162 (1950), the Court states;

> "The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable * * * The function of a patent is to add to the sum of useful knowledge * * * A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men."

See also Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549–550, 58 S.Ct. 662, 82 L.Ed. 1008 (1938).

4. In Electric Vacuum Cleaner Co. Inc., v. P. A. Geier Co., 118 F.2d 221, 224 (6 Cir., 1941), the Court pointed out that;

> "It's not sufficient that a thing is new and useful to entitle its creator to a patent. He must do more. He must discover it by either mental labor or intellectual creation, although it may be the result of mental accident. It cannot arise from knowledge common to all persons skilled in the art. The patentee must have some addition to the common stock of knowledge and not be merely the first to use in combination what was known before, without producing a new and different result."

See also Westinghouse Electric & Manufacturing Co. v. Powerlite Switchboard Co., 142 F.2d 965 (6 Cir., 1944).

5. In Schriber-Schroth Co. v. Cleveland Trust Co. et al., 305 U.S. 47, 57, 59 S.Ct. 8, 83 L.Ed. 34 (1938), the Court stated:

> "It follows that the patent monopoly does not extend beyond the invention described and explained as the statute requires, Permutit Co. v. Graver Corporation, supra, 284 U.S. 52, at page 57, 52 S.Ct. 53, [76 L.Ed. 163], that it cannot be enlarged by claims in the patent not supported by the description, Snow v. Lake Shore & M. S. Ry. Co., 121 U.S. 617, 7 S.Ct. 1343, 30 L.Ed. 1004; cf. Smith v. Snow, 294 U.S. 1, 55 S.Ct. 279, 79 L.Ed. 721, and that the application for a patent cannot be broadened by amendment so as to embrace an invention not described in the application as filed, at least when adverse rights of the public have intervened."

See also Chicago Forging Mfg. Co. v. Bade-Cummins Mfg. Co., 63 F.2d 928 (6 Cir., 1933).

■ 6. Upon consideration and review, this Court finds that the evidence presented at trial conclusively shows that the plaintiff's allegations of infringement are naked and unsupported by the requisite facts, and that the heavy burden of proof that is necessary to invalidate the plaintiff's patents in the suit has been amply met by the defendant, and their affirmative defense that the patents –378 and –566 are invalid, void and not infringed upon is sustained by this Court.

7. With respect to alleged infringement, it is the finding of this Court that the defendant's practices regarding three vinyl silanes and a methacrylato silane are not the teachings of either of the TeGrotenhuis patents in suit.

8. The defendant does not utilize allyl silanes in its practices, as the –566 patent states, nor does it apply the coupling compounds either by a vapor treatment or from an organic solvent as the Te-

Grotenhuis patent states. Rather the defendant applies all the coupling compounds to the glass fibers from water solutions.

9. The fourth silane, the methacryloxypropyltrimethoxysilane (A–174 and Z–6030) is neither a vinyl nor allyl silane,' nor an alkenyl silane (R. 800–01, 962–68, 1020). This particular silane, not being a vinyl silane nor an equivalent of vinyl is not within the scope of the –378 or –566 patent.

10. For these reasons, the practices of the defendant are not within the plaintiff's allegations of infringement, and are not considered by this Court.

11. As a matter of law, this Court finds that the prior art relevant to this case shows that organo-silanes react with glass surfaces, including fiber glass surfaces and thereby become bonded to the glass. Also, the prior art teaches specifically that alkenyl silanes (which include both allyl and vinyl) react with glass surfaces and become bonded thereto. It is noted that the prior art teaches that the alkenyl silanes promote adhesion of resins to fiber glass. The alkenyl silanes and specifically the allyl silane when adhered to glass and glass fibers, will chemically react with a subsequent coating composition to bond the coating to the glass. Furthermore, the prior art also teaches that the allyl silanes will copolymerize with the polyester resins involved in this suit. In view of these findings, this Court concludes that Mr. T. A. TeGrotenhuis made no contribution to relevant art involved in this suit. For these reasons, the subject matter of the patents in suit was obvious to those skilled in the art at the time of the alleged TeGrotenhuis invention. Pursuant to 35 U.S.C. § 103 the patents are invalid, and this Court so finds.

12. Furthermore, the original 1945 application of T. A. TeGrotenhuis neither discloses or relates to any suggestion of glass or glass fibers. Therefore, this Court will give no validity to claims in a subsequent application covering glass or glass fibers based upon the 1945 application.

13. Furthermore, the 1945 application fails to teach any method of making a hydrolyzable vinyl silane. It is again stated that no method was known of making such a material in 1945 by those skilled in the art. It is concluded therefore that the 1945 application is invalid as to claims of a vinyl silane.

14. Also the 1945 application does not teach that vinyl silanes are superior in any respect to other silanes. It is the finding of this Court that the –378 patent is predicated solely on this alleged superiority and therefore is not entitled to the filing date of the defective 1945 application.

15. The allyl and the vinyl silanes are homologues and admittedly equivalents.

16. The use of allyl silanes has been amply demonstrated and fully disclosed in the prior art, thus invalidating the –566 patent.

17. No new or unexpected results are achieved by the use of vinyl silanes as distinguished from the allyl silanes of the prior art when used for treating glass fibers for use in the reinforcement of polyester resins.

18. For these reasons, the TeGrotenhuis patents –566 and –378 are not entitled to the 1945 application filing date. Therefore, the United States Patent No. 2,742,378 granted April 17, 1956 and United States Patent No. 2,-841,566 granted July 1, 1958 are declared invalid.

19. It is the finding of the Court that the evidence conclusively shows that Dr. Steinman and his colleagues at Owens-Corning had conceived all essential features of the subject matter claimed and had applied all essential features of the subject matter claimed and had applied both allyl silicates and allyl silanes to glass fibers before any date of invention alleged by Mr. TeGrotenhuis. This invention of the subject matter having been made by Dr. Steinman and known to him and his co-workers before Mr. TeGrotenhuis conceived his alleged invention

renders the TeGrotenhuis patents invalid in accordance with 35 U.S.C. § 102 (a) and (g).

20. Upon careful review of the records, and as pointed out, this Court concludes that all essential features of the subject matter claimed in the two patents were taught to Mr. TeGrotenhuis by Dr. Rochow. Therefore, pursuant to 35 U.S.C. § 102(f) the patents in suit are invalid due to lack of invention.

21. Therefore, judgment is entered for the defendant, Owens-Corning Fiberglas Corporation, and the patents of T.A. TeGrotenhuis applicable to this suit are hereby declared invalid and not infringed by the defendant.

22. This constitutes the findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.