**YOUNG CORPORATION, a Washington corporation, Plaintiff-Appellant,**

v.

**Roy F. JENKINS and Jane Doe Jenkins, his wife, dba Doroy Grapple Company, Defendants-Appellees.**

No. 22083.

United States Court of Appeals Ninth Circuit.

June 28, 1968.

Benjamin F. Berry (argued), Carl G. Dowrey of Seed, Berry & Dowrey, Seattle, Wash., L. R. Geisler, Portland, Ore., for appellant.

Jon. Dickinson (argued) of Kolisch & Hartwell, Portland, Ore., for appellee.

Before HAMLEY and ELY, Circuit Judges, and VON DER HEYDT,* District Judge.

HAMLEY, Circuit Judge:

Young Corporation (Young), owner of United States Letters Patent No. 3,082,031, issued to R. H. Lindberg on March 19, 1963, brought this action for patent infringement against Roy F. Jenkins and Dora Jenkins, his wife, dba Doroy Grapple Company. Defendants denied the infringement allegation and counterclaimed for a judgment declaring the Lindberg patent invalid. After a trial without a jury, a judgment was entered adjudicating that the Lindberg patent is invalid and, if valid, not infringed by the accused device, and dismissing the action. Young appeals.

The grapple described in the Lindberg patent is a scissors-type device having two points or jaws which are substantially alike and are arcuately shaped. They are pivotably joined to legs intermediate to the ends of the jaws, and the legs are secured to opposite ends of a cross-beam. The cross-beam, in turn, is suspended by cables from a boom.

The mechanism is designed for use in loading logs on a truck or railroad car in a heel-boom loading operation. The

---

* The Honorable James A. von der Heydt, United States District Judge for the District of Alaska, sitting by designation.

lower ends of the jaws engage the logs to be lifted and the upper ends of the jaws constitute lever arms for operating the jaws. The lever arms are pivotally interconnected by a pivot means and one of the lever arms is provided with a pulley or sheave wheel at its upper end.

Two control cables are used in operating the grapple. One of the cables is a lifting cable attached to the cross-beam and the other is used to close the jaws and exert a lifting force. The jaw-controlling cable passes between a double set of guide rollers on the cross-beam and about the sheave wheel on the jaw. This cable then extends upwardly about a second sheave wheel on the cross-beam and downwardly where it dead-ends on the upper end of the other jaw.

When the grapple is free from a log, it is raised and lowered by the lifting cable. When the grapple is in engagement with a log, the controlling cable causes the jaws to squeeze or clamp the log by hauling in on the jaw-controlling cable. The controlling cable also provides the lifting force to raise the log. The jaws are permitted to open by gravity under their own weight by releasing the controlling cable.

In practice, the grapple picks up a log short of its midpoint. The short end of the log, which is the end closest to the boom, is forced against a heeling plate on the bottom of the boom. The log is then heeled or pivoted into a desired position and deposited on the truck or railroad car.

Claim 1 of the Lindberg patent is a combination claim which recites the following elements and the interrelationship and functional relationship between these elements: (1) a pair of cables, (2) a frame structure, (3) a pair of legs, (4) two jaws, (5) means to secure one cable to the frame structure, (6) means pivotally securing the legs to the frame and jaws, (7) pivot means interconnecting the pair of jaws, and (8) interconnection of the other cable to the jaws.[1]

As conceded during the course of the trial by Lindberg, who appeared as a witness for Young, and by Young's counsel, the only contribution to the log-grappling art manifested by the Lindberg patent was the use of two overlapping jaws instead of three or more jaws. In determining that this limited contribution to the art was insufficient to validate the Lindberg patent, the trial court held, among other things, that the difference between a two-point grapple and three- or four-point grapples (which are concededly old in the art) is such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the log-grappling art, and the patent is therefore, under 35 U.S.C. § 103 (1964), invalid for obviousness.

On the question of obviousness, the Supreme Court instructed, in Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545, that the obviousness or nonobviousness of the subject matter of a patent is to be determined by pursuing the following line of inquiry: (1) the scope and content of the prior art are to be determined, (2) the differences between the prior art and the claims at issue are to be ascertained, and (3) the level of ordinary skill in the pertinent art is to be resolved. The Court also stated that, as indicia of obviousness or nonobviousness, inquiries concerning commercial success, long-felt but unsolved needs, and the failure of others, may have relevance.[2]

1. On the question of validity of the Lindberg patent, the parties directed their attention exclusively to claim 1. Young does not question the trial court determination that the remaining two claims of that patent are dependent on claim 1 and merely recited additional old elements which function together in the expected manner to produce the expected result.

2. See also, Jeddeloh Bros. Sweed Mills, Inc. v. Coe Mfg. Co., 9 Cir., 375 F.2d 85, 88; Hensley Equip. Co., Inc. v. Esco Corp., 9 Cir., 375 F.2d 432, 436.

We will assume for present purposes that a two-point grapple, as distinguished from a grapple having three or more points, was new in the art. Absent something unusual or surprising about the result achieved by a two-point grapple, envisioned by the inventor at the time, the elimination of one or more jaws to obtain a two-point grapple will be obvious to one having ordinary skill in the pertinent art.[3]

But Young contends that something fairly remarkable, and not to be anticipated by one of ordinary skill, was accomplished by cutting down the device to two jaws. It argues that the Lindberg two-point grapple was not obvious because it required the inventor to disregard long-accepted principles in the art.

The basic principle of grapple operation is that of "lateral squeeze," whereby the arcuate jaws of the grapple wrap themselves around the log in a bear-hug fashion. At the time of the Lindberg invention the prevailing concept of a grapple structure was a "balanced grip," meaning that multiple, spaced jaws were thought necessary on at least one side of the grapple in order to create a balanced or single force on the logs. A single line or force on the logs was believed necessary to prevent twisting or canting during the handling and loading operations.

The three- or four-point grapples, necessary to achieve a balanced grip, proved inefficient in many respects in the heel-boom loading operation. Because the grapple had more than one point on a single side of the log, the log was not free to pivot between the jaws without creating a stress on the log and grapple. As a consequence, the logs were often damaged. In addition, damage to the grapples frequently occurred because of bending stresses resulting from improper alignment of the grapple with the heel boom and operating cables.

Young argues that the Lindberg grapple is a "radical departure" from the prevailing concept at the time of the invention. This argument is premised on the company's view that the two-jaw scissors-like Lindberg grapple employs a "lopsided" or "unbalanced" grip on the log, resulting in true grapple action and free pivoting of the log without damage to the log or grapple. Based on this line of reasoning, Young concludes that it was not obvious to one skilled in the art that a two-point unbalanced grapple would work successfully.

While Young thus characterizes the asserted "unbalanced" grip of the Lindberg device as a "radical departure" from the prevailing concept, we are no more convinced than was the trial court that the Lindberg grapple departs from the prevailing concepts in the log-grappling art and that the superior results achieved by the Lindberg device were beyond the comprehension of one having ordinary skill in the art.

The trial court expressly found that the designing of a two-point grapple, as distinguished from a grapple having more than two points, did not involve a disregard of accepted principles of mechanics. The court also found and concluded that all of the elements of the Lindberg patent are old and function together in the expected manner to produce the expected result. It further found, by implication, that one having ordinary skill in the pertinent art would be aware of accepted principles of mechanics, would be familiar with all of the old elements which were combined in the Lindberg patent, and would be familiar with the expected manner in which they would function together and the expected result of such combination functioning. We are not convinced that these findings and conclusions are clearly erroneous or contrary to law.

It appears to us that the asserted difference in result, as between the prior art and the Lindberg patent, which is

---

3. See Great A. & P. Tea Co. v. Supermarket Equip. Co., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162; Bentley v. Sunset House Distrib. Corp., 9 Cir., 359 F.2d 140, 143–145.

the predicate for Young's argument that Lindberg is nonobvious, was not envisioned by the inventor and, indeed, was not a part of the invention as disclosed by the patent.

The primary difference in result contended for by Young is the achievement, under the Lindberg patent, of the so-called "unbalanced" grip. But it looks very much as if this were an afterthought not to be ascertained from an examination of the patent itself. Quite to the contrary, the excerpts from the patent specifications, quoted in the margin, seem to indicate that the Lindberg patent contemplates a balanced rather than an unbalanced action.[4] In addition, claim 2 of the patent specifies that, as a result of using the "pad" means, "a substantially balanced and directly opposed gripping action is provided when the jaws close against a log." Figure 5 of the Lindberg patent shows how pads are employed to obtain a balanced gripping action on the logs.

It is true that, in the Lindberg patent, the achievement of balanced gripping is associated with the use of pads which are not referred to in claim 1. But, for all the patent discloses, use of pads was intended to assure that if balanced gripping could not be achieved with the two-point jaws described in claim 1, this could be corrected by the use of pads. Nowhere in the patent instrument or in the file wrapper is the obtaining of unbalanced gripping referred to as desirable or attainable under the Lindberg patent.

We conclude, as did the trial court, that the Lindberg grapple is not contrary to, but in full accord with, the accepted concepts of grapple construction. We regard Young's present reliance upon the achievement of an "unbalanced" gripping action as about the same kind of *ex post facto* invention condemned by the Supreme Court in Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545.[5]

Young calls attention to portions of the record showing that the Lindberg device operated successfully, that it has become the predominant grapple structure for heel-boom loading, that it has had commercial success and widespread acceptance, and that it fulfilled a long-felt need in the industry. Giving appropriate weight to these collateral indicia of nonobviousness, we hold, as did the trial court, that they do not carry the day for Young.

■ The considerations discussed above lead us to conclude that the trial court did not err in finding and concluding that the Lindberg patent is invalid for obviousness within the meaning of 35 U.S.C. § 103.

4. Specifications of the Lindberg patent, Col. 1, lines 26–33:
   "It is a further object of the present invention to provide a grapple of the above stated character having its jaws so designed that their application to a selected or designated log in a deck is greatly facilitated, and wherein the grapple jaws or legs are equipped at their inner edges with pads that are designed to engage the log to neutralize the twisting effect that is inherent in a grapple of two leg scissors-type design."
   Specifications, Col. 3, lines 58–64:
   "To give those curved seat forming portions which close against the log when gripped, a balanced and directly opposed gripping action, the jaw bodies are equipped along their inner edges with pads 55—55′ as seen in FIGS. 5 and 6. Thus in closing against a log the tendency for the frame to angle relative to the log which otherwise would be noted, is hereby nullified."

5. In *Graham*, the Court said:
   "Petitioners' argument basing validity on the free-flex theory raised for the first time on appeal is reminiscent of Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938), where the Court called such an effort 'an afterthought. No such function * * * is hinted at in the specifications of the patent. If this were so vital an element in the functioning of the apparatus it is strange that all mention of it was omitted.' At p. 550, 58 S.Ct. at p. 665. No 'flexing' argument was raised in the Patent Office." 383 U.S. at 25, 86 S.Ct. at 697.

We do not reach the question of whether the patent was also invalid for lack of novelty, and the question of whether, if the patent is valid, it was infringed by Jenkins, both of which questions the trial court resolved against Young.

Affirmed.