**WESTWOOD CHEMICAL, INC.,**
Plaintiff-Appellant,

v.

**OWENS–CORNING FIBERGLAS COR-
PORATION,** Defendant-Appellee.

No. 20845.

United States Court of Appeals,
Sixth Circuit.

Aug. 24, 1971.

Paul A. Weick, Akron, Ohio, for plaintiff-appellant; Weick & Genovese, Akron, Ohio, Arland T. Stein, Blenko, Leonard & Buell, Pittsburgh, Pa., C. D. Lambros, Cleveland, Ohio, on brief; T. A. TeGrotenhuis, Cleveland, Ohio, of counsel.

William H. Webb, Pittsburgh, Pa., for defendant-appellee; John M. Webb, Russell, D. Orkin, Pittsburgh, Pa., Warren Daane, Cleveland, Ohio, on brief; Webb, Burden, Robinson & Webb, Pittsburgh, Pa., Baker, Hostetler & Patterson, Cleveland, Ohio, of counsel.

Before EDWARDS, CELEBREZZE and BROOKS, Circuit Judges.

BROOKS, Circuit Judge.

This is an appeal by plaintiff-appellant, Westwood Chemical, Inc., owners of patents Nos. 2,742,378 and 2,481,566 (hereinafter '378 and '566) from a judgment of the District Court holding the patents invalid and finding that defendant-appellee, Owens-Corning Fiberglas Corporation, did not infringe the patents. Westwood Chemical, Inc. v. Owens-Corning Fiberglas Corporation, 317 F.Supp. 201 (N.D.Ohio, 1970). Patent '378 was granted on April 17, 1968, on application No. 302,415 filed August 2, 1952, and was a continuation-in-part of application No. 251,152 filed October 12, 1951, and of application No. 243,737 filed August 25, 1951, and of application No. 585,824 filed March 30, 1945. Patent '566 was granted on July 1, 1958, on application No. 302,415 filed August 2, 1952, and was a continuation-in-part of the same parent applications from which patent '378 originated. It was stipulated that in order for both patents to be valid it was necessary to receive the benefit of the earlier filing date of the parent application No. 585,824 filed March 30, 1945, on a continuation-in-part basis (35 U.S.C. § 120).

The substance of the invention claimed by its inventor, T. A. TeGrotenhuis, relates to treating fillers, pigments and fibers with unsaturated organo-silanes for use in reinforcing polyester resins and the resulting polyester resin bodies.[1] The invention claimed by patent '378 is the use of certain hydrolyzable silane chemicals having vinyl groups as coupling agents to reinforce the polyester resins. Patent '566 makes the claim of using hydrolyzable silane chemicals having alkenyl groups other than vinyl, specifically allyl silanes, as the coupling agent. Generally, the claimed objective of both inventions was to provide a resin, such as plastic or glass fibers, with greater strength and water resistance by treatment with the hydrolyzable silane chemicals.

As a preliminary matter, it is noted that the District Court in its conclusions of law numbered 6, 11, and 18–21, for various reasons, held both patents invalid. When this lawsuit was initiated plaintiff generally alleged infringement of the two patents. In response to a demand by defendant to specify which claims of the patents were allegedly infringed, plaintiff itemized claims 1, 3, 4, 6, 7, 8, 11, 14, 15–19, 21, 23–26 and 28 of patent '378 and claim 8 of patent '566. It was in this posture that the case went to trial. After trial plaintiff, in a post trial brief, attempted to remove from the Court's consideration all the

1. Both patents are in the nature of process and product patents.

allegedly infringed claims of patent '378 except claims 11, 16 and 25, and the entire patent '566. Plaintiff now contends the District Court overstepped its authority in declaring both patents entirely void without defendant having sought declaratory relief. See Sterling Aluminum Products, Inc. v. Bohn Aluminum & Brass Corporation, 187 F.Supp. 879 (E. D.Mich.1960), aff'd. 298 F.2d 538 (6th Cir. 1962). We agree. The District Court's holding of invalidity should only apply to the patents' claims directly in issue. Bain v. M. A. Hanna Company, 331 F.2d 974 (6th Cir. 1964), cf. Goodwin v. Carloss Company, 116 F.2d 644 (6th Cir. 1941). However, plaintiff further argues that the only claims in issue were those it itemized in its post trial brief. To this we cannot agree. Once the case went to trial and completion on certain specified claims, it was proper for the court to render a judgment as to those claims. Following a trial during which defendant has presented its case as to all claims in issue, plaintiff cannot without court permission, and in an ex parte fashion, be allowed to withdraw certain claims from the court's consideration. Allegheny Steel & Brass Corporation v. Elting, 141 F.2d 148, 149 (7th Cir. 1944); Young v. John Mc-Shain, Inc., 130 F.2d 31, 34 (4th Cir. 1942). Accordingly, while plaintiff could not withdraw from consideration by the court the claims in issue at trial, the court's holding must be limited to those specific claims and in so far as the judgment in this case may be construed to apply to those claims not placed in issue, it must be modified.

Because an affirmance of the District Court's holding of invalidity obviates the necessity to review the question of whether or not defendant infringed the patents,[2] we turn directly to the issue of invalidity. Felburn v. New York Central Railroad Company, 350 F.2d 416, 420 (6th Cir. 1965), National Transformer Corporation v. France Manufactur-

ing Company, 215 F.2d 343 (6th Cir. 1954).

On the issue of the holding of the invalidity of the patents, the District Court made numerous findings of fact and conclusions of law which cumulatively negated practically every statutory requirement for validity of the patents in suit. Thus, the District Court found that the Court of Custom and Patent Appeals' decision in TeGrotenhuis v. Yaeger, 290 F.2d 951, 48 C.C.P.A. 1058 (1961) only resolved an interference issue as to whether TeGrotenhuis' 1945 application made sufficient disclosure of vinyl silanes and it did not, as plaintiff contends, reach or decide the question of whether or not the patent involved in the interference could validly receive the benefit of the earlier filing date of the 1945 application on a continuation-in-part basis. On this point, the District Court concluded that the patents could not receive the benefit of the earlier filing date because they were not properly based on valid continuation-in-part applications. Specifically, the Court held: 1. The 1945 application made no disclosure, implicitly or explicitly, as to glass fiber reinforced polyester resins and, therefore, the subsequent applications (upon which the two patents were based) covering glass fiber polyester resins could not receive the benefit of the 1945 filing date; 2. The 1945 application failed to teach a method for making hydrolyzable vinyl silanes and, therefore, the 1945 application cannot be used as a basis for these claims in the later applications; 3. The 1945 application did not disclose that vinyl silanes are superior coupling agents as compared with other known silanes and that this alleged superiority was the principal claim of patent '378; and 4. Allyl and vinyl silanes are equivalents (both are included in the alkenyl silanes group) and the use of allyl silanes as coupling agents with polyester resins

---

2. The District Court's decision on the question of infringement is found in its conclusions of law numbered 7–10, 317 F.

Supp. 201 at 215–216. The Court held that defendant's practices did not infringe the patents.

(the claim of patent '566) was disclosed in the pre-1945 art.

The District Court also concluded that TeGrotenhuis had all essential features of his invention taught him through a lecture on the subject by a Dr. Rochow and, thus, there was a lack of required "invention". 35 U.S.C. § 102(f). Furthermore, the District Court found that the subject matter claimed by the Te-Grotenhuis invention was known and used by others in this country before TeGrotenhuis invented it, 35 U.S.C. § 102(a), and the invention was made prior to TeGrotenhuis' effective date of conception, 35 U.S.C. § 102(g).[3] Lastly, the District Court concluded that the subject matter of TeGrotenhuis' invention was obvious at the time of invention to a person having ordinary skill in the art. 35 U.S.C. § 103.

■ The law is clear that a patent once issued is presumed valid, 35 U.S.C. § 282, and that a heavy burden of proof rests on the party attempting to prove invalidity. See Ever-Wear, Inc. v. Wieboldt Stores, Inc., 427 F.2d 373 (7th Cir. 1970). However, a patent to be valid must meet all the requisite statutory requirements. See 35 U.S.C. § 101. And an invention which does not combine the three essential elements of novelty, utility and nonobviousness should not be given the privileged monopolistic status of a patent. Monroe Auto Equipment Company v. Heckethorn Manufacturing & Supply Company, 332 F.2d 406, 409–410 (6th Cir. 1964); Zero Manufacturing Company v. Mississippi Milk Producers Association, 358 F.2d 853, 855 (5th Cir. 1966). For the reasons hereafter stated, we affirm the judgment of the District Court as modified on the basis of its holding that the inventions claimed by the patents in issue were obvious to one having ordinary skill in the art. Thus, it is not necessary that we reach or decide the correctness of the District Court's alternative grounds for having held the patents in issue invalid.

This Circuit has approached the question of what constitutes "obviousness" through a three-step test prescribing what portions of the question turn on factual determinations and which are purely legal. The first step is "a determination of what the prior art was; this involves factual questions. Secondly, there is a determination of what, if any, improvement the patentee has made over the prior art; this will usually turn on expert testimony and therefore is a question of fact. The final step is to determine whether the improvement would have been obvious to one skilled in the art. This requires application of a legal criteria and therefore is a question of law, fully reviewable by the appellate court." Monroe Auto Equipment Company v. Heckethorn Manufacturing & Supply Company, supra, 332 F.2d at 411. The Supreme Court has also recognized the factual and legal composition of the question of obviousness. They have stated in Graham v. John Deere Company, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1965), that:

"While the ultimate question of patent validity is one of law, Great A. & P. Tea Co. v. Supermarket [Equipment] Corp., supra, [340 U.S. 147], at 155, [71 S.Ct. 127, 95 L.Ed. 162], the § 103 condition, which is but one of three conditions, each of which must be satisfied, lends itself to several basic factual inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or non-

---

3. Plaintiff argues his patents should be given priority because of an alleged earlier date of conception and diligence to the time of reduction to practice, although subsequent to the others, 35 U.S.C. § 102 (g), and that the District Court erred in not considering the diligence issue. However, because of our disposition of this case we do not reach this question.

obviousness of the subject matter is determined."

The District Court did an excellent job in determining the state of the prior art in a highly complex and technical area. There were the teachings of nine prior patents that were considered and plaintiff has challenged the inclusion of certain of these patents as prior art. There is possible merit to the challenge against the inclusion as prior art of the Steinman Patent No. 2,563,288. It is also arguable that the Witt Patent No. 2,649,396 is not proper prior art as against the TeGrotenhuis patents, however, the other seven patents considered by the District Court are certainly prior art as against the patents in issue,[4] and the District Court's findings of fact as to the teachings of these patents are not clearly erroneous. Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C., National Athletic Supply Corporation v. Tone-O-Matic Products, Inc., 421 F.2d 407, 408 (5th Cir. 1970); cf. Payne Metal Enterprises, Ltd. v. McPhee, 382 F.2d 541, 543 (9th Cir. 1967), which distinguishes conclusions of law from the clearly erroneous test.

Moreover, even if the District Court improperly considered these two patents as prior art, we cannot say that this amounts to reversible error when, as in this case, there is substantial competent evidence in the record which supports the District Court's conclusions of law. Amerline Corporation v. Cosmo Plastics Company, 407 F.2d 666, 669 (7th Cir. 1969); cf. Kaiser Industries Corporation v. McLouth Steel Corporation, 400 F.2d 36, 48 (6th Cir. 1968). Only a brief reiteration of the findings of the District Court as to the teachings of these prior patents is necessary here. The Court found:

1. Johannson Patent No. 2,436,304 granted on application made June 11, 1943 taught and disclosed that treated glass fibers having allyl groups on the surface treated with methyl violet will react with the unsaturated allyl silane on the glass fibers. The object of the discovery was to "provide organophobic base members with adherent films which act as bonding agents for organic resins * * *" (and) "to provide a method for increasing adhesion on organic resins * * *" (and) "to provide an invisible and permanently attached priming coat on normally organophobic base members for the irreversible attachment of organic compositions." This Johannson Patent states that the invention was based upon the discovery that "organophobic surfaces become organophobic when treated with organo-silicon compounds comprising hydrolyzable organo-silicones, their hydrolysis products or their polymerized hydrolysis products, and that the adhesion or organic compositions such as resins, plastic * * * and the like to the organophobic surfaces thus provided is substantially greater than it is for the original untreated surfaces." The Johannson Patent defines the suitable organo-silanes for the process as "Alkenyl such as methallyl, allyl, etc." Example No. 2 of the patent claimed a process that treated glass fibers with a hydrolyzable allyl silane, methallylsilicon trichloride. Example No. 5 of the patent taught a positive chemical reaction occurs between a primer such as glass fiber surfaces, a coupling agent (an amino-organosilane) and a subsequent organic material (diazotized aniline hydrochloride). The TeGrotenhuis patent '566 claims the use of hydrolyzable silane chemicals having alkenyl groups other than vinyl, specifically allyl silanes, as coupling agents.

2. The Johannson Patent No. 2,557,787 was granted on a divisional applica-

---

4. In considering these other patents as prior art, we have accepted, for argument purposes only, that plaintiff in fact is entitled to the earlier filing date of its parent application. It must be observed, however, that the District Court found plaintiff was not so entitled, and our proceeding on the assumption that he was should in no way be construed as a definitive ruling on that question. See also n. 5 *infra*.

tion of the application upon which Johannson Patent No. 2,436,304 was granted and, thus, has the benefit of the earlier filing date of June 11, 1943. 35 U.S.C. § 121. This Johannson Patent was directed to a method of "increasing the adhesion of organic resins to glass surfaces". The organo-silicon compounds used to treat siliceous surfaces so as to become organophilic were organo-silicon halides. The organo-silicon halides named included "alkenyl such as methallyl, allyl, etc." Expert testimony by a Dr. Rochow was to the effect that this Johannson Patent taught the use of a vinyl type unsaturated substance as a coupling agent. And from this testimony the District Court found as a fact that the vinyl substance acting as a coupling agent was "a material which reacted with the absorbed water on the glass surface and established an organosilane layer which later bond with the overlying material added on top of the coupling layer." The TeGrotenhuis patent '378 claimed the use of certain hydrolyzable silane chemicals having vinyl groups as coupling agents to reinforce polyester resins.

3. The Patnode Patent No. 2,306,222 granted on application made November 16, 1940, taught that glass surfaces, particularly fiber glass surfaces, become water repellant when treated with vapors of an organo-silicon halide.

4. The Kropa Patent No. 2,465,731 granted on application made August 1, 1944, taught a method of preparing allyl chlorosilanes. The District Court also found that this patent made significant disclosures of the properties and uses of chlorosilanes.

These four patents were part of the prior art considered by the patent examiner in studying the applications for the TeGrotenhuis patents. The Johannson Patent No. 2,436,304 and Kropa Patent No. 2,465,731 were part of the prior art considered under TeGrotenhuis Patent No. 2,742,378. The Johannson Patents Nos. 2,436,304 and 2,557,786, Kropa Patent No. 2,465,731 and Patnode Patent No. 2,306,222 were part of the prior art considered under TeGrotenhuis Patent No. 2,841,566. Plaintiff correctly contends the fact that the patent examiner considered these patents when deciding on the question of the patentability of the claimed TeGrotenhuis inventions reinforces the presumption of validity which attaches to a patent once issued. Scaramucci v. Dresser Industries, Inc., 427 F.2d 1309 (10th Cir. 1970); Skil Corporation v. Cutler-Hammer, Inc., 412 F.2d 821 (7th Cir. 1969). But, on the other hand, the District Court also had properly before it three significant prior art patents as against the TeGrotenhuis patents which were not considered by the patent examiner. The failure of the Patent Office to consider pertinent prior art tends to weaken if not vitiate, the presumption of validity. Reeves Brothers, Inc. v. United States Laminating Corporation, 417 F.2d 869 (2nd Cir. 1969); B. F. Goodrich Company v. Rubber Latex Products, Inc., 400 F.2d 401 (6th Cir. 1968).

Of the three patents not considered by the patent examiner, the most revealing was Steinman Patent No. 2,513,268.[5] This Steinman Patent (another Steinman Patent, No. 2,563,288, was considered by the District Court, but on the evidence it is questionable whether it was properly viewed as prior art) was granted on application filed December 30, 1944. The District Court found the patent taught a method of combining fibrous glass with resinous materials whose objective was providing "an ad-

5. The District Court upon consideration of the evidence found that Dr. Steinman conceived his invention in 1943. We dismiss summarily plaintiff's claim that this was not a proper prior art patent because the court below failed to inquire into TeGrotenhuis' diligence from conception to reduction to practice. In so doing we reject the assumption of plaintiff's argument that the District Court erred in finding a conception date for this Steinman Patent earlier than TeGrotenhuis' conception date.

hesion-promoting agent, substances capable of polymerizing with the resin and reacting with the glass surface of the fibers to create a secure interbond between the dissimilar materials." Accomplishment of this objective was made by treating the glass fibers with allyl silicates. And the resultant improved properties from the treatment of the glass fibers were attributed "to the fact that unsaturated silicates are capable of copolymerizing with the resin to become in effect one with the resin surrounding the fiber surfaces. They also are believed to react to hydrolysis with the glass surfaces to be anchored securely to the fibers." From expert testimony, the District Court found that allyl silicates while not identical to allyl and vinyl silanes are functionally and structurally the same.

Another important prior art patent not examined by the Patent Office in issuing the TeGrotenhuis patents was Biefeld Patent No. 2,392,805 granted on application filed October 11, 1943. This patent taught that treatment of glass fibers with a composition including hydrolyzable organo-silane, e. g., "alkenyl such as methallyl, allyl, etc." (which were found to include vinyl silane), could be used to reinforce resins or plastics and the treated resin-glass fiber combination has tremendously added strength properties.

The last pertinent prior art patent scrutinized by the District Court was Hyde Patent No. 2,390,370 granted on application filed October 11, 1943. This patent was principally concerned with coating of "glass fibers particularly when grouped in strand or yarn form." The coating process was accomplished through the treating of glass fibers with hydrolyzable organo-silanes, including "alkenyl such as methallyl, allyl, etc.". One of plaintiff's experts, a Dr. Price, admitted that alkenyl also embraces vinyl. The Hyde Patent taught the usefulness of this treatment in promoting adhesion of certain varnishes to glass fibers. The importance of this patent, as well as the Biefeld Patent mentioned

above, is in its disclosure that allyl and vinyl hydrolyzable silanes couple with glass fibers and that certain "desirable" properties result.

These factual determinations on the status of the prior art are not clearly erroneous and this Court is bound by them. The District Court concomitant with its consideration of the prior art heard testimony from expert witnesses on the subject of exactly what improvement the claimed TeGrotenhuis inventions made over the prior art. This is the second analytical step in determining obviousness as prescribed in Monroe Auto Equipment Company v. Heckethorn Manufacturing & Supply Company, 332 F.2d 406, 411 (6th Cir. 1964). As might be expected, there was conflict in the experts' testimony as to the significance of the improvement. Plaintiff's witnesses testified to remarkable and important advancement in the art as a result of the TeGrotenhuis contribution. Defendant's experts claimed TeGrotenhuis' inventions added nothing to the art. The Court found as a fact that the teachings of the TeGrotenhuis patents were either entirely or significantly portended by the prior art and little if any contribution was made to the existing art by the TeGrotenhuis inventions.

From these factual determinations— the state of the prior art and the improvement over the prior art made by the TeGrotenhuis inventions—the District Court resolved the legal question of whether the inventions in issue were obvious to one skilled in the art adversely to plaintiff. See Conclusion of Law No. 11, 317 F.Supp. 201 at 216 (N.D. Ohio, 1970). Our review confirms the legal correctness of this conclusion. It seems apparent, given the state of the prior art and the improvement over the art made by TeGrotenhuis' inventions, that "there was an absence of that degree of skill and ingenuity which constitutes essential elements of every invention." Hotchkiss v. Greenwood, 52 U.S. (11 How. 248) 13 L.Ed. 683 (1851). The TeGrotenhuis inventions were of a nature that they were obvious

to a person having ordinary skill in the art. 35 U.S.C. § 103.

■ Plaintiff argues that insufficient weight was given by the District Court to the important secondary indicia of nonobviousness such as commercial success, Graham v. John Deere Company, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965); Application of Sponnoble, 405 F.2d 578 (C.C.P.A.1969); and long felt but unresolved need in the industry, Young Corporation v. Jenkins, 396 F.2d 893 (10th Cir. 1968). However, secondary indicia of nonobviousness are relevant and become supplementally useful only when there is a close question of whether the subject matter of an invention was obvious. Kaiser Industries Corporation v. McLouth Steel Corporation, 400 F.2d 36 (6th Cir. 1968); Waldon, Inc. v. Alexander Manufacturing Company, 423 F.2d 91 (5th Cir. 1970). These secondary considerations, no matter how persuasive, cannot save the patentability of an invention when it clearly appears, as in this case, that the invention was obvious to one skilled in the art.

■ The last argument raised by plaintiff requiring comment is its allegation that it was denied a fair trial because of prejudicial rulings by the District Court on evidentiary matters. It is claimed that the District Court erred in not admitting certain crucial evidence, not excluding other evidence and in restricting plaintiff's cross-examination of one of defendant's witnesses. The record indicates that often the District Court ruled the way it did because it felt the evidence offered was repetitious, not germane, or there was insufficient proof of expertise in certain textbook materials offered as authoritative documents. Respecting the allegations of improperly admitted evidence, it must be noted that in a trial to the court it is presumed that evidence which is improper will be disregarded by the court. Processteel, Inc. v. Mosley Machinery Company, 421 F.2d 1074, 1076 (6th Cir. 1970); Taylor v. Taylor, 211 F.2d 794 (8th Cir. 1954).

Moreover, we have not been convinced that the admissions complained of were, in fact, erroneous.

■ On the issue of claimed error in the Court's ruling excluding certain evidence and restricting the scope of plaintiff's cross-examination, the burden of proving prejudice rests on plaintiff. Voigt v. Chicago & Northwestern Railway Company, 380 F.2d 1000 (8th Cir. 1967). Plaintiff has failed to prove that any of the evidence it wished to offer was more than cumulative, Crown Cork & Seal Company v. Morton Pharmaceuticals, Inc., 417 F.2d 921 (6th Cir. 1969), or that the Court abused its discretion in limiting the scope of cross-examination. In short, plaintiff has failed to show that if any of the District Court's evidentiary rulings were erroneous, plaintiff's right to a fair trial was prejudiced. Rule 61, Federal Rules of Civil Procedure.

■ The judgment of the District Court is modified by restricting the determination of invalidity to the claims in issue, i. e., claims 1, 3, 4, 6, 7, 8, 11, 14, 15–19, 21, 23–26 and 28 of patent '378 and claim 8 of patent '566 and as so modified the judgment is affirmed.