Alden W. HANSON, Plaintiff-Appellee,

v.

ALPINE VALLEY SKI AREA, INC.,
Defendant-Appellant.

No. 77–1444.

United States Court of Appeals,
Sixth Circuit.

Argued June 5, 1979.

Decided Dec. 18, 1979.

Peter P. Price, Price, Heneveld, Huizenga & Cooper, John F. DeWitt, Grand Rapids, Mich., Julius Tabin, John F. Flannery, Fitch, Even, Tabin & Luedeka, Chicago, Ill, for defendant-appellant.

Bernd W. Sandt, Midland, Mich., for plaintiff-appellee.

Before LIVELY and MERRITT, Circuit Judges, and BROWN *, District Judge.

BAILEY BROWN, District Judge.

This is an action alleging patent infringement, and the patent alleged to be infringed is a process for making snow for winter sports. The plaintiff below, appellee here, is Alden W. Hanson (Hanson), who is the inventor and patentee of the patent. The defendant below, appellant here, is Alpine Valley Ski Area, Inc. (Alpine). Alpine's defenses are that the patent is invalid and that, in any event, it is not infringed by Alpine, as is alleged by Hanson, in using snow-making equipment purchased by it from Hedco, Inc. (Hedco).[1] The case was tried before District Judge James Harvey who filed findings and conclusions to the effect that four of the claims of the patents are valid and that three of these were infringed.

It appears that there has been a great increase in winter sports in recent years but that, even in the northern parts of the United States, there is frequently a shortage of snow. This has created a need for snow making at winter sports locations.

In 1954, a patent was issued to W. M. Pierce, Jr., no. 2,676,471 (the "Pierce, Jr. 471 patent"), which claims a method of making snow to meet the needs of winter sports, particularly for skiing. In general, this patent teaches a method whereby a parallel system of two pipes, one carrying compressed air and one carrying water under pressure, is placed alongside a ski run. The water and the compressed air concurrently fed to a series of fine nozzles which emit the combined compressed air and water, the expanding air creating a sufficient decrease in temperature to convert the water into snow. This system, or variations of it, has been used extensively but it has drawbacks, one of which is the tendency of the nozzles to freeze up and thereby become inoperative and another of which is the substantial capital investment necessary for the installation of such a system.

In 1961, the patent in suit was issued to Hanson (no. 2,968,164, the "Hanson 164 patent"). It claims a method of making snow that does not require a system of pipes and does not require compressed air. In general, this patent teaches that snow can be produced if, with the ambient temperature at or below 30 degrees F, a large volume of air is produced, as with a motor driven propeller, and water is projected into this fast-moving stream of air. The preferred embodiment, as set out in the specification, is to place a concave cup on the hub of the propeller and to project the water counter-current to the air into the cup as a deflector with the result that the water splashes into drops in front of the propeller. The drops are carried by the airstream and are then cooled, become snow, and are deposited as such. The patent also teaches that the use of dirty water or water mixed with crushed ice increased the snowmaking capacity of such equipment because the dirt and ice particles act as nuclei and aid in crystallization of the water drops. So using crushed ice is included in the description of the preferred embodiment. Finally, the patent teaches that the apparatus for making snow is movable as needed.

---

* Honorable Bailey Brown, Chief Judge, United States District Court for the Western District of Tennessee, sitting by designation at time of argument of this case. (Subsequently elevated to the Sixth Circuit Court of Appeals on September 27, 1979.)

1. Hedco was originally a defendant but was later dismissed for lack of venue. It did, however, take over the defense of this case.

The process of freezing water is more complicated than commonly understood. Essentially it involves the removal of heat energy from water. However, when the temperature of water is brought down to the freezing point (32 degrees F), a barrier is reached in that a great deal more energy must be removed to reduce the temperature by one degree than is necessary to reduce it by one degree when the temperature is higher than 32 degrees F or to reduce it by one degree (after it is frozen) when it is below that point. Further, water will not freeze at 32 degrees F unless "nucleation" occurs. This was, as has been indicated, recognized to some extent by the specification of the Hanson 164 patent, though nucleation was not fully understood at that time. Nucleation initiates the solidifying process and, to create ice, the presence of a nucleating agent in each particle of water is required. Minute clay particles can act as nucleating agents, and minute ice particles, whether introduced as such or whether formed spontaneously when the temperature reaches ±40 degrees F, will also act as nucleating agents. In the process taught by the Pierce, Jr. 471 patent, nucleating agents can be clay particles in the water or can be ice particles formed spontaneously by the sharp reduction in temperature caused by expansion of compressed air. On the other hand, in the process taught by the Hanson 164 patent, nucleating agents can be clay particles in the water or ice particles mixed with the water. Moreover, when the method taught by the preferred embodiment of the Hanson 164 patent is used, spontaneous nucleation will occur in the vortices of air at the tips of the propeller, extremely cold temperature being created there by air expansion. Snow cannot be made, of course, unless the water is finely divided into drops from which heat is removed and in which nucleation occurs.

The trial court held that claims 1, 2, 5 and 6 of the Hanson 164 patent are valid. Claim 1 calls for:

The method of forming, distributing and depositing snow upon a surface, including:

mechanically providing a large volume movement of air at atmospheric pressure;

said movement of air created by a motordriven propeller,

said air having an ambient temperature at or below about 30 degrees Fahrenheit; and

projecting water into said movement of air in an amount and at a rate such that substantially all of the water so introduced is at least partially crystalized prior to depositing on said surface.

Claim 2 is identical to claim 1 except that it recites (1) that the movement of air is "directable" and (2) that the water projected is a "directable stream of water."

Claim 5 is the same as claim 1 except that it (1) omits the recitation that the movement of air is provided "mechanically" and that (2) "a mixture of crushed ice and water in a ratio not less than one part crushed ice to two parts of water and not more than two parts of crushed ice to one part of water" is substituted for "water."

Claim 6 is the same as claim 1 except that it (1) omits the recitation that the movement of air is provided "mechanically" and that it (2) omits the recitation that the movement of air is "created by a motor-driven propeller" and that (3) "a mixture of crushed ice and water" is substituted for "water."

## THE VALIDITY ISSUE

As stated, Alpine contends that claims 1, 2, 5 and 6 in the Hanson 164 patent are invalid because they do not meet the requirements of non-obviousness as set out in 35 U.S.C. § 103.[2]

2. It is not clear whether Alpine contends also that the Hanson 164 patent lacks novelty under 35 U.S.C. §§ 101 and 102(a). In any case, as will appear from our discussion of the obviousness issue under § 103, the trial court found,

with which we agree, that it did have novelty. Sections 101, 102(a) and 103 provide as follows:

§ 101. Inventions patentable

As a matrix in which to consider Alpine's contention of invalidity, we can do no better than quote from the opinion of this court in *Bolkcom v. The Carborundum Company*, 523 F.2d 492, (6th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1725, 48 L.Ed.2d 194 (1976), in which the court said at 498:

 As we stated in *Westwood Chemical, Inc. v. Owens-Corning Fiberglass Corp.*, 445 F.2d 911 (6th Cir. 1971), *cert. denied*, 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 786 (1972), there are three essential elements of patent validity: novelty, utility and non-obviousness. These requirements are codified in 35 U.S.C. §§ 101–103.

 In applying this test, we begin with the principle that every patent issued by the patent office carries, at the outset, a presumption of validity, 35 U.S.C. § 282, which is justified by the "complexities of patent law and the expertise of the patent office." *Monroe Auto Equipment Co. v. Heckethorne Mfg. & Supply Co.*, 332 F.2d 406, 412 (6th Cir.), *cert. denied*, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964). And where the most pertinent prior art has been considered by the patent office, the presumption is greatly strengthened. *Tapco Products Co. v. Van Mark Products Corp.*, 446 F.2d 420 (6th Cir.), *cert. denied*, 404 U.S. 986, 92 S.Ct. 451, 30 L.Ed.2d 370 (1971). *See also Great Lakes Equipment Co. v. Fluid Systems, Inc.*, 217 F.2d 613, 617 (6th Cir. 1954). Conversely, "where applicable prior art has not been considered by the Patent Office this presumption is greatly weakened." *Dunlop Company, Ltd. v. Kelsey-Hayes Co.*, 484 F.2d 407, 413 (6th Cir. 1973), *cert. denied*, 415 U.S. 917, 94 S.Ct. 1414, 39 L.Ed.2d 471 (1974), *Monroe Auto Equipment Co., supra.*

As will be seen, we conclude that the Patent Office did consider the most relevant prior art and therefore the presumption of validity created by 35 U.S.C. § 282 is greatly strengthened here.

The Patent Office considered the Pierce, Jr. 471 patent, heretofore described, which appears to have been the only existing patent that claims a process for making snow. The only other patents considered by the Patent Office or cited by Alpine in this litigation have to do with a method of distributing materials by a propeller-driven airstream or have to do with a method of making ice by blowing cold air countercurrent to a stream of water in an enclosed tower; we agree with the trial court that these patents are not pertinent to the teaching and claims of the Hanson 164 patent for making and depositing snow in a winter sports area.

In *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), it is stated that the question of obviousness under 35 U.S.C. § 103 is to be determined as follows (pp. 17–18, 86 S.Ct. p. 694):

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such sec-

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

**§ 102. Conditions for patentability; novelty and loss of right to patent**

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

**§ 103. Conditions for patentability; non-obvious subject matter**

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

ondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy.

At the outset, we must agree with Hanson's position that it is difficult to square Alpine's strong contention in the trial court, which is abandoned here, that the Hanson patent 164 has no utility (as such is required by 35 U.S.C. § 101) with its position that it was obvious from the teaching of the Pierce 471 patent and the literature that the practice of the Hanson 164 patent would make and deposit snow on the ground. In short, Alpine has taken the inconsistent positions that the practice of the Hanson 164 patent would not make snow and also that it was obvious from the prior art that it would make snow.

On the issue of non-obviousness, the trial court found, *inter alia*:

> Because there was no evidence of a prior method of snow making analogous to that of Plaintiff's invention and there is no evidence that persons of ordinary skill in the art knew that snow could be made without the use of compressed air, the Court finds that Claims 1, 2, 5 and 6 of the patent in suit are not invalid for obviousness under 35 U.S.C. 103.

■ We agree with this finding. The only existing method of making snow for the purpose we are considering at the time of the invention by Hanson was that taught by the Pierce, Jr. 471 patent which involved the use of compressed air and a complicated system of pipes and fine nozzles. The Hanson method does not require any of these elements. Moreover, it was not suspected, prior to Hanson's invention, that a large volume of air, such as could be created in the open by a motor-driven propeller, with ambient temperature at or below 30 degrees F, would have the capacity to remove a sufficient amount of energy necessary to freeze water in the air before it made contact with the ground. This is a "synergistic result" and, therefore, we conclude that, although it is a combination method patent, it meets the requirement of non-obviousness as set out in 35 U.S.C. § 103. *See generally: Anderson's-Black Rock, Inc. v. Pavement Salvage Co., Inc.*, 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969).

Our conclusion that the Hanson 164 patent was not obvious in the light of the prior art is further supported by the fact that it was licensed to Snow Machines Incorporated in 1970 which has since made and sold around a thousand snow-making machines. This licensee has, however, improved on the patent's teaching in that it sprays the water on the back side of the propeller, making the apparatus even more effective.

The other contention of Alpine that the claims of the Hanson patent 164 are invalid is that they lack the definiteness required by 35 U.S.C. § 112.[3] More specifically, Alpine contends that the failure of the claims to spell out the procedure to obtain "finely divided water" (i. e. water drops) or to generate spontaneous nuclei supports the conclusion that they do not meet the requirement of § 112.

■ While the claims do not include the procedure to generate spontaneous nucleation, as has already been stated, spontaneous nucleation was not fully understood at that time and, in any event, the specification, as has been shown, points out the importance of supplying nuclei. Moreover, spontaneous nucleation occurs, when the preferred embodiment is practiced, in the

---

**3.** 35 U.S.C. § 112 provides:

**§ 112. Specification**

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

vortices created at the propeller tips. An inventor is not "required to comprehend the scientific principles on which the practical effectiveness of his invention rests." *Application of Aufhauser*, 399 F.2d 275 (C.C.P.A. 1968) at 283.

It is also true that the claims do not spell out the procedure to finely divide the water that is necessary to make snow. However, the specification makes clear that this may be done by nozzles, and, as the trial court found, the patent teaches that the water can be finely divided by simply directing it into the rapidly moving large volumes of air.

■ The test for definiteness is whether the disclosures would enable one skilled in the art to construct the device and make snow with it. *Tillotson Manufacturing Co. v. Textron, Inc., Homelite Division*, 337 F.2d 833, 840 (6th Cir. 1964). We believe that one so skilled could follow the teaching of the Hanson 164 patent and make snow for the intended purpose.

We therefore conclude that the claims are sufficiently definite to pass muster under 35 U.S.C. § 112.

### THE INFRINGEMENT ISSUE

As stated, the trial court found infringement as to claims 1, 2 and 6 of the Hanson 164 patent. It found literal infringement of claims 1 and 2 and found infringement of claim 6 by application of the doctrine of equivalents.

The Hedco machine is the accused device. It consists of a motor driven propeller located at one end of a movable tubular structure or shroud; a large volume of air is blown through this structure; downstream of the propeller in the shroud is a series of nozzles through which compressed air containing moisture is released to form spontaneous nuclei; additional small amounts of water are released by these nozzles to prevent evaporation of the nuclei; and as the airstream bearing such nuclei passes out of the shroud, cold water is sprayed therein by a second series of nozzles located at the periphery of the shroud. The airstream mixes the water with the ice nuclei and carries the water particles a sufficient time to freeze them into snow and deposit them on the ground. The volume of water is controllable by shutting off one or more nozzles at the periphery of the shroud.

■ In determining whether there is literal infringement, the words in the claim in the patent must be compared with the accused device. If the claim reads directly on the accused device, literal infringement is established. *Acme Highway Products Corp. v. The D. S. Brown Co.*, 473 F.2d 849, 850 (6th Cir.), *cert. denied*, 414 U.S. 824, 94 S.Ct. 125, 38 L.Ed.2d 57 (1973).

■ We conclude, as did the trial judge, that the operation of the Hedco machine reads directly on claim 1 of the patent. This is true since the Hedco machine forms, distributes and deposits snow upon a surface by mechanically providing a large volume movement of air at atmospheric pressure at a temperature at or below 30 degrees F, the movement of air being created by a motor driven propeller, and the amount of water projected into the airstream is controlled such that substantially all of the water so introduced is crystallized before depositing on the ground. Similarly, as the trial judge held, claim 2 is literally infringed since the large volume movement of air is directable and the water is directable since the nozzles can be turned off and on and placed at various locations and angles.

Alpine argues that the use of the nucleators on the Hedco machine to form spontaneous nuclei refutes infringement. However, as Hanson argues and the trial court found, the Hedco device reads directly on claims 1 and 2 even when the nucleators are operating. Actually, there was substantial evidence and the trial court found that the Hedco machine was sometimes used by Alpine (as when the nucleators froze and became inoperative) without the nucleators functioning, and it still produced snow. This evidence tended to support the utility of the Hanson 164 patent method even when the preferred embodiment, before described, is not practiced. Electrical heating

**162**

has been added to the Hedco nucleators to prevent freezing.

The trial court also determined, we believe correctly, that infringement of claim 6 is established under the doctrine of equivalents because the ice particles generated by the nucleators in the Hedco machine are the functional equivalent of the crushed ice described in claim 6. *Acme Highway Products, supra,* 473 F.2d 849, 851 (6th Cir. 1973).

■ The last contention advanced by Alpine is that the file wrapper history of the prosecution of the Hanson 164 patent estops Hanson from contending that the Hedco device infringes the patent.[4] The argument is based on the fact that the Hedco device introduces finely divided water into the airstream to make snow. During the prosecution of the Hanson 164 patent, the examiner pointed out that the specification stated that an object of the invention was to provide a method not subject to the necessity for very fine sprays but that another part of the specification discloses the use of finely divided water introduced into the air. The examiner then pointed out that the device would be subject to freezing at the nozzles as in the Pierce, Jr. 471 patent. Hanson then struck from the specification this finely divided reference and stated that the water may be introduced by a garden hose nozzle. Thus Alpine argues that Hanson may not now contend there is an infringement since the Hedco device uses finely divided water.

We do not, however read this file wrapper history to mean that Hanson was no longer claiming a method for making snow that otherwise practiced his claim if finely divided water was introduced. The Hanson claims were never changed in this respect and by their terms they cover the introduction of finely divided water. Moreover, the specification continued to recite that the Hanson method will operate effectively if finely divided water is introduced into the airstream. We therefore construe this file wrapper history as simply making it clear

that the Hanson method will also operate successfully without introducing finely divided water.

### CONCLUSION

Since we agree with the district court's determination that the claims of the patent are valid and were infringed, the judgment of the district court is

AFFIRMED.

---

4. For a discussion of the doctrine of file wrapper estoppel see *Kaiser Industries Corporation v. McLouth Steel Corp.,* 400 F.2d 36, 51–56, (6th Cir. 1968), *cert. denied,* 393 U.S. 1119, 89 S.Ct. 992, 22 L.Ed.2d 124 (1969).